# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CHICAGO H&S HOTEL PROPERTY, L.L.C. | ) | Case No. 07-20088 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date: November 1, 2007 |
| | ) | Hearing Time: 8:45 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 1, 2007 at 8:45 a.m., or as soon thereafter as counsel may be heard, we will appear before the Honorable Eugene R. Wedoff, or any judge sitting in his stead, in Room 744 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and present the **DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND OTHER COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361, 362 AND 363 OF THE BANKRUPTCY CODE, AND (B) TO SCHEDULE A FINAL HEARING**, a copy of which is hereby served upon you.

Dated: October 31, 2007

CHICAGO H&S HOTEL PROPERTY, L.L.C.

By:    /s/    Daniel A. Zazove
PERKINS COIE LLP
Daniel A. Zazove (ARDC # 3104117)
Jason D. Horwitz (ARDC # 6269962)
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone: 312.324.8400
Facsimile: 312.324.9400
e-mail: dzazove@perkinscoie.com
e-mail: jhorwitz@perkinscoie.com

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP
Charles R. Gibbs
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343
email: cgibbs@akingump.com

*Attorneys for the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

I, Daniel A. Zazove, an attorney, certify that I caused to be served upon the parties named on the attached service list a true and correct copy of the **Notice of Motion** and **Debtor's Motion for Interim and Final Orders (a) Authorizing Debtor to Use Cash Collateral and Other Collateral and Granting Adequate Protection Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, and (b) to Schedule a Final Hearing** via electronic transmittal or facsimile, as indicated, by 5:00 p.m. on October 31, 2007.

Date: October 31, 2007

/s/ Daniel A. Zazove_____

## HOTEL 71
### FIRST DAY SERVICE LIST3

| Via E-mail: | |
|---|---|
| **Paul R. Walker**<br>Sidley Austin LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br>213-896-6600 (Fax)<br>Email:  pwalker@sidley.com | **Mark A. Jefferis**<br>**Anderson D. Capton**<br>Cadwalader, Wickersham & Taft LLP<br>227 West Trade Street<br>Charlotte, NC  28202<br>704 348 5200 (Fax)<br>Email:  mark.jefferis@cwt.com<br>        anderson.capton@cwt.com |
| **David R. Kuney**<br>Sidley Austin LLP<br>1501 K. Street, N.W.<br>Washington, D.C. 20005<br>202-736-8711 (Fax)<br>Email:  dkuney@sidley.com | **Cornelius P. Brown**<br>Cohon Raizes & Regal LLp<br>208 S. LaSalle Street, Suite 1860<br>Chicago, IL 60604<br>312-726-0609 (Fax)<br>nbrown@cohonraizes.com |
| **David Neff**<br>DLA Piper US LLP<br>203 North LaSalle Street<br>Chicago, IL 60601<br>(312) 630-2758 (Fax)<br>Email:  David.Neff@dlapiper.com | Dave Zych<br>**Excel Freight**<br>17330 Preston Road<br>Suite 200DC<br>Dallas, TX 75252<br>(972) 447-0075 (Fax)<br>Email:  dave.zych@ets.excel.com |
| Jonathan Strouse<br>**Les Meubles Saint Damase, Inc.**<br>Holland & Knight<br>131 S. Dearborn,<br>30th Floor<br>Chicago, IL 60603<br>(312) 578-6666 (Fax)<br>Email:  jonathan.strouse@hklaw.com | Robert Warman<br>**West Paces**<br>3384 Peachtree Road, Suite 375<br>Atlanta, GA 30326<br>(404) 842-7288 (Fax)<br>Email:  bwarman@westpaceshotel.com |

26277-0005/LEGAL13692295.1

### HOTEL 71
### FIRST DAY SERVICE LIST

| Via Facsimile: | |
|---|---|
| **Roman Sukley**<br>Office of the U.S. Trustee, Region 11<br>227 W. Monroe Street<br>Suite 3350<br>Chicago, IL 60606<br>312-886-5794 (Fax) | Deanna Schaffino<br>**Hudson Boiler**<br>1725 W. Hubbard Street<br>Chicago, IL 60622<br>(312) 666-5145 (Fax) |
| **Casa Madrona Hotel & Spa**<br>801 Bridgeway<br>Sausalito, CA 94965<br>(415) 332-2537 (Fax) | Jeff Lazar<br>**JL Furnishings**<br>3040 E. Maria Street<br>Rancho Dominguez, CA 90221<br><br>(310) 605-6614 (Fax) |
| Vicky Wallace<br>**Crane Revolving Door**<br>924 Sherwood Drive<br>Lake Bluff, IL 60044<br>(847) 295-5288 (Fax) | Laren Green<br>**Altour International**<br>12100 W. Olympic Blvd, Suite 300<br>Los Angeles, CA 90064<br>(310) 698-5974 (Fax) |
| Kerri Castoro<br>**Life Fitness**<br>5100 N. River Road<br>Schiller Park, IL 60176<br>(847) 288-3703 (Fax) | Keri Kelly<br>**Travel Tech Group**<br>110 W. Hubbard<br>Chicago, IL 60610<br>(312) 329-9513 (Fax) |
| **Mid America Telephone Systems**<br>11643 S. Austin Avenue<br>Alsip, IL 60803<br>(708) 396-8821 (Fax) | John Nash<br>**TIG Global, LLC**<br>5335 Wisconsin Avenue NW, Suite 780<br>Washington, DC 20015<br>(202) 465-3950 (Fax) |
| Chris Caplette<br>**EEC Industries**<br>1237 Welch Street<br>North Vancouver V7P1B3<br>British Columbia<br>(604) 986-2999 (Fax) | Attn Accounts Receivable<br>**Travel Escape, LLC**<br>d/b/a Expedia Travel<br>10190 Covington Cross Drive<br>Las Vegas, NV 89144<br>(214) 792-8655 (Fax) |
| Francois Geneve<br>**Francois Geneve Products**<br>2112 W. Grace Street<br>Chicago, IL 60618<br>(773) 975-0920 (Fax) | Kanika Richardson<br>**The Puckett Group, Inc.**<br>300 E. McBee Avenue<br>Greenville, SC 29601<br>(864) 233-9604 (Fax) |

26277-0005/LEGAL13692295.1

# HOTEL 71
### FIRST DAY SERVICE LIST2

| | |
|---|---|
| Abe Assellini<br>**Midwest Contract Glazing**<br>3014 W. Fillmore<br>Chicago, IL 60612<br>(773) 533-7474 (Fax) | Adelaide DaCosta<br>**Sally Fourmy & Associaes**<br>30 Duncan Street, Floor 4<br>Toronto M5V2C2 ON<br>Canada<br>(416) 593-7034 (Fax) |
| **Spargo & Associates**<br>Attn: Accounts Receivable<br>11212 Waples Mill Road, Suite 104<br>Fairfax, VA 22030<br>(703) 818-9177 (Fax) | |

26277-0005/LEGAL13692295.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re | ) |
| | ) |
| CHICAGO H&S HOTEL PROPERTY, L.L.C. | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |

Chapter 11

Case No. 07-20088

Hon. Eugene R. Wedoff

Hearing Date: November 1, 2007
Hearing Time: 8:45 a.m.

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS**
**(A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL**
**AND OTHER COLLATERAL AND GRANTING ADEQUATE PROTECTION**
**PURSUANT TO SECTIONS 361, 362 AND 363 OF THE BANKRUPTCY CODE,**
**AND (B) TO SCHEDULE A FINAL HEARING**

Chicago H&S Hotel Property, L.L.C., (the "Debtor"), by its undersigned counsel, files

this Motion[1] for Entry of Interim and Final Orders Authorizing the Debtor to Use Cash Collateral

and Other Collateral and Granting Adequate Protection Pursuant to Sections 361, 362 and 363 of

the Bankruptcy Code, and to Schedule a Final Hearing (the "Motion").   In support of this

Motion, the Debtor respectfully represents as follows:

## I.  Jurisdiction

1.    The Bankruptcy Court exercises jurisdiction over this Motion pursuant to 28

U.S.C. §§ 157 and 1334 and IOP 15(a) of the Internal Operating Procedure of the United States

District Court for the Northern District of Illinois.  This matter is a core proceeding within the

---

[1]    The proposed interim cash collateral order (the "Interim Cash Collateral Order") is attached to
this Motion as **Exhibit A**.  The final cash collateral order (the "Final Cash Collateral Order") will
be filed separately.  Capitalized terms used but not defined herein shall have the meanings
ascribed to them in the Interim Cash Collateral Order.

meaning of 28 U.S.C. § 157(b)(2). Venue of this bankruptcy case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested by the Motion are sections 361, 362 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules").

## II.     Background

3.     On October 29, 2007 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor owns and operates a 40 story, 437 guestroom, full service hotel at a prime downtown location in Chicago, Illinois adjacent to the Chicago River and Michigan Avenue (71 West Wacker Drive) known as Hotel 71 ("Hotel 71" or the "Property"). The Property was constructed as a luxury apartment complex in 1958 and was converted to a hotel in 1987. The Debtor continues to operate and manage Hotel 71 pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

### A.     Prepetition Capital Structure

4.     In 2005, the Property was purchased by the Debtor, which at the time was indirectly owned by, among others, members of the Mitchell and Falor families, with the express intention of converting it into a condominium hotel.[2]

---

[2]     A condominium hotel is one in which an individual may purchase a fee simple interest of a deeded condominium guestroom. When the owner is at the property, he or she may use all of the amenities and services of the hotel. When not on the premises, the owner may make the

5.      The Debtor's acquisition and intended improvement of Hotel 71 were financed by a senior and mezzanine loan. The senior loan (the "Senior Loan"), dated March 30, 2005, was made by Column Financial, Inc. ("Column"), as agent, in the amount of $100,785,289.00. Proceeds of the Senior Loan were used to renovate Hotel 71 and convert it into a condominium hotel. The Senior Loan is secured by (a) a first Mortgage and Security Agreement on the land, all improvements, equipment, fixtures, personal property, accounts and rents (the "Mortgage"), and (b) an Assignment of Leases and Rents (the "Rent Assignment," and together with the Senior Loan agreement, the Mortgage and related documents, the "Senior Loan Documents"). For the purposes of this Motion, "Rents" mean all rents, rent equivalents, room revenues, income, receivables, revenues, insurance proceeds, deposits, charges for services rendered and any and all other payment and consideration of whatever form or nature received by the Debtor or Senior Lender (as defined herein and including any predecessors, successors and assigns)[3] arising from the operation of Hotel 71 from any and all sources relating to the use, enjoyment and occupancy of the Property or any other definition of "rents" provided in the Senior Loan Documents. The Senior Loan was subsequently assigned to Wells Fargo Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corporation ("CSFB"). Upon information and belief, shortly before this bankruptcy case was filed, CSFB assigned its rights in the Senior Loan to Canyon Capital Realty Advisors LLC (the "Senior Lender"). As of the Petition Date, the principal amount of the Senior Loan was approximately $95 million.

---

guestroom available for other hotel guests. Revenue generated through such rentals is shared between the unit owner and the hotel entity.

- 4 -

6.     On March 29, 2005, Hotel 71 Mezz Lender, L.L.C. (the "Mezz Lender"), a special purpose entity owned by Oaktree Capital Management, LLC, made a mezzanine loan (the "Mezz Loan") in the principal amount of $27,338,801.00 to the Debtor's parent, Chicago H&S Senior Investors, LLC (the "Equity Holder"). The Mezz Loan was secured by, among other things, a pledge of the Equity Holder's 100% interest in the Debtor.

**B.     Events Leading to Chapter 11 Filing**

7.     The condominium conversion proved to be improvident for the Debtor's former owners and was abruptly halted when the Debtor expended most of the proceeds of the Senior Loan that had been set aside for such purposes. Both the Senior and the Mezz Loans were declared in default.

8.     On July 16, 2007, the senior lender filed a Complaint for Mortgage Foreclosure in the Circuit Court of Cook County, Illinois, Chancery Division, which remains pending as of the Petition Date. Additionally, the Mezz Lender attempted to foreclose its security interest in the Debtor's ownership interest by a public sale under the Uniform Commercial Code. However, on March 2, 2007, the Equity Holder filed for relief under chapter 11 of the Bankruptcy Code in this Court (Case No. 07-03783) to stay the foreclosure sale pursuant to Section 362 of the Bankruptcy Code.

9.     The Mezz Lender moved to dismiss the Equity Holders' bankruptcy case, and on June 26, 2007, the Bankruptcy Court entered a Stipulation and Agreed Order Continuing Mezz Lender's Motion to Dismiss (the "Stipulation and Agreed Order"). The Stipulation and Agreed Order, among other things, (a) contained an explicit acknowledgment from the Equity Holder that its debt to the Mezz Lender was validly and immediately due and owing, (b) provided the Equity Holder an opportunity to satisfy the Mezz Loan by a sale or refinancing on or before

September 17, 2007, and (c) modified the automatic stay to allow the sale of the Mezz Lender's security interest in the Equity Holder in the event that the Equity Holder was unable to satisfy its obligations by the September 17, 2007 deadline.

10.     On September 17, 2007, when the Equity Holder failed to comply with the obligations of the Stipulation and Agreed Order, the automatic stay was modified to allow the Mezz Lender to foreclose its security interest. On October 3, 2007, the Mezz Lender conducted a foreclosure sale of its collateral pursuant to Article 9 of the Uniform Commercial Code and purchased the Equity Holder's interest in the Debtor, making the Mezz Lender the 100% owner of the Debtor.

**C.     Sale of the Property**

11.     Over the last six months, there has been little progress in the renovation of the Hotel, and the intended remodeling is substantially incomplete. As of the Petition Date, only 78 of the 437 guestrooms have been renovated, 144 rooms are not in service and construction has not commenced on approximately one-third of the floors at the Property. Additionally, the Property is subject to more than 60 mechanic lien claims and the Debtor is a named defendant in more than a dozen lawsuits.

12.     The Debtor filed this chapter 11 case to stabilize the Property, resolve mechanic lien claims and facilitate a going concern sale of Hotel 71 pursuant to a chapter 11 plan. In furtherance of that goal, the Debtor has filed a motion seeking approval of a listing agreement with Jones Lang LaSalle Americas, Inc. to market and sell the Property.

### III.     Relief Requested

13.     By this Motion, the Debtor requests entry of interim and final orders authorizing the Debtor to:

(a)    use Senior Lender's cash collateral, including, but not limited to, that cash collateral relating to the Rents of Hotel 71 (the "Cash Collateral"), pursuant to sections 361, 362 and 363 of the Bankruptcy Code and any other collateral in which Senior Lender has an interest (collectively with the Cash Collateral, the "Prepetition Collateral"), and provide adequate protection to Senior Lender's interests in the Prepetition Collateral resulting from its use; and

(b)    pursuant to Bankruptcy Rule 4001, schedule, within 30 days of the entry of the Interim Cash Collateral Order, a hearing (the "Final Hearing") for this Court to consider entry of a final order authorizing the use of Cash Collateral, as set forth in this Motion.

## IV.    Basis for Relief

14.    Without the use of the Cash Collateral, the Debtor does not have sufficient available working capital to finance its ongoing postpetition business operations pending a sale of Hotel 71 (the "Asset Sale").

15.    The Debtor believes that use of its Cash Collateral will allow it to operate as a going concern pending the Asset Sale, and thus maximize the value of the estate for all creditors. In the absence of immediate authorization of the use of the Cash Collateral, the Debtor could not continue to operate its business, and will incur immediate and irreparable harm to its estate. The use of such Prepetition Collateral is fair and reasonable and reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties. Further, the Debtor believes that the proposed adequate protection for Senior Lender, including the use of Cash Collateral to pay postpetition operating expenses and the postpetition liens, each described below, will preserve the value of Hotel 71 for the benefit of the Senior Lender.

## V.    Compliance with Local Rule 4001-2

16.    Local Rule 4001-2, which governs cash collateral motions filed within this Judicial District, requires the Debtor to highlight certain provisions contained in the Interim Cash Collateral Order, identify the location of any such provision in such order, and state the

- 7 -

justification for the inclusion of such provision.[3]  The Debtor believes that Local Rule 4001-2 is

minimally implicated by the provisions of the Interim Cash Collateral Order, but to the extent

---

[3]   Local Rule 4001-2(a)(i) states:

All Financing Motions must (a) recite whether the proposed form of order or underlying cash collateral stipulation or loan agreement contains any provision of the type indicated below, (b) identify the location of any such provision in the proposed form of order, cash collateral stipulation or loan agreement, and (c) state the justification for the inclusion of such provision:

(a) Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the pre-petition secured creditors (i.e., clauses that secure pre-petition debt by post-petition assets in which the secured creditor would not otherwise have a security interest by virtue of its pre-petition security agreement or applicable law).

(b) Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or debt or the waiver of claims against the secured creditor without first giving parties in interest at least 75 days from the entry of the order and the creditors' committee, if formed, at least 60 days from the date of its formation to investigate such matters.

(c) Provisions that seek to waive any rights the estate may have under § 506(c) of the Bankruptcy Code.

(d) Provisions that immediately grant to the pre-petition secured creditor liens on the debtor's claims and causes of action arising under §§ 544, 545, 547, 548, and 549 of the Bankruptcy Code.

(e) Provisions that deem pre-petition secured debt to be post-petition debt or that use post-petition loans from a pre-petition secured creditor to pay part or all of that secured creditor's pre-petition debt, other than as provided in § 552(b) of the Bankruptcy Code.

(f) Provisions that provide treatment for the professionals retained by a committee appointed by the United States Trustee different from that provided for the professionals retained by the debtor with respect to a professional fee carve-out, and provisions that limit the committee counsel's use of the carve-out.

(g) Provisions that prime any secured lien, without the consent of that lienor.

(h) A declaration that the order does not impose lender liability on any secured creditor.

26277-0005/LEGAL13689941.1

that Local Rule 4001-2 is implicated, that such provisions are justified and necessary in the context and circumstances of this case.

17.     Local Rule 4001-2(A)(2)(b) provides for additional disclosure with respect to findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's lien. In paragraph 5 of the Interim Cash Collateral Order, the Debtor acknowledges the validity of the Senior Lender's lien. However, other parties in interest are provided 75 days from the entry of the Interim Cash Collateral Order and any official unsecured creditors committee, if formed, is given 60 days from the date of its formation to investigate the validity and perfection of such Senior Loan and liens. The Debtor believes that this clause is appropriate because it may be necessary to obtain the Senior Lender's consent to the use of the Cash Collateral.

18.     Local Rule 4001-2(A)(2)(g) provides for additional disclosure of provisions that prime any secured lien. The Debtor does not believe that this Local Rule applies because, as set forth in paragraph 7 of the Interim Cash Collateral Order, the postpetition liens provided to the Senior Lender are subject to any valid mechanics or similar liens or other senior liens.

19.     Local Rule 4001-2(A)(3) requires that all cash collateral motions provide a summary of all provisions that must be highlighted under Local Rule 4001-2(A)(2) and a summary of the essential terms of the proposed usage of cash collateral. The Debtor asserts that it has complied with this requirement by attaching the Interim Cash Collateral Order, which

---

(i) Provisions that grant the lender expedited relief from the automatic stay in § 362 of the Bankruptcy Code, or relief from the automatic stay without further order of court.

Local Rule 4001-2.

- 9 -

contains all of the terms of the Debtor's use of Cash Collateral, including those specifically referenced in Local Rule 4001-2(A)(3).

20.     Lastly, Local Rule 4001-2(A)(4) provides that all cash collateral motions must provide a budget covering the time period in which the order shall remain in effect. In satisfaction of such requirement, attached to the Interim Cash Collateral Order as **Exhibit 1** is a copy of the budget (the "Budget"). The Debtor shall file updated versions of the budget with the Court as such updates become available.

## VI.    The Court Should Authorize the Use of the Prepetition Collateral Including the Cash Collateral

21.     The Rents generated by Hotel 71, and subject to the Senior Lender's Mortgage and Rent Assignment, constitute Cash Collateral. Section 363(a) of the Bankruptcy Code defines cash collateral as, among other things, "the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title." 11 U.S.C. § 363(a). Section 552(b)(2) similarly states that:

> [i]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement. . . .

11 U.S.C. § 552(b)(2).

22.     The Debtor has a critical need for the immediate use of Senior Lender's Cash Collateral. The former owners of Hotel 71 failed to properly manage the Property, abandoning

- 10 -

construction mid-stream and leaving many of the hotel's guestrooms partly renovated and unsuited for use by Hotel 71 patrons. There are also numerous unpaid vendors as well as mechanic lien claims asserted against the Property, threatening the continued operation of the hotel. Indeed, absent a filing, these vendors and mechanics lien claimants would have shut down the hotel's profitable room service, banquet and group business (including rooms, weddings and other social events), thereby impairing the going concern value for the Property.

23.     Therefore, the Debtor requires use of the Cash Collateral to operate its business and to pay vendors, the Property manager, taxes, insurance and bankruptcy-related expenses, so that the hotel can continue to generate revenue and maintain its value pending the Asset Sale. If the Debtor is unable to use the Cash Collateral, its business will quickly deteriorate, thereby reducing the value of the estate and jeopardizing creditors' recoveries. In order to enable the Debtor to consummate the Asset Sale, approval of the use of the Prepetition Collateral is imperative.

### VII.   The Court Should Allow the Debtor to Provide Adequate Protection

24.     Under section 363(c)(2) of the Bankruptcy Code, the Debtor may not use the Cash Collateral without the consent of Senior Lender or authority granted by the Court. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

25.     As adequate protection for Senior Lender's interest in the Cash Collateral, the Debtor proposes to use the Cash Collateral solely to pay operating expenses of the hotel, including the Property manager, postpetition vendors, insurance, taxes and bankruptcy-related expenses, as more specifically described in the Budget attached as **Exhibit 1** to the proposed

- 11 -

Interim Cash Collateral Order pending the Asset Sale. By so doing, the Debtor anticipates that it will be able to preserve the Property – *i.e.,* Senior Lender's collateral – and keep it from deteriorating or diminishing in value pending its sale. Indeed, the Debtor submits that expending the Cash Collateral on the hotel itself can only preserve the value of the Property and, thus, Senior Lender's mortgage interest.

26.     The Debtor further proposes to grant Senior Lender, as adequate protection, a valid, binding, enforceable and perfected lien, mortgage and security interest in and to all of the Debtor's property and assets acquired after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, but excluding all causes of action under Chapter 5 of the Bankruptcy Code, which such liens shall be senior to all other liens and encumbrances other than any valid mechanics or similar liens. Finally, the Debtor proposes to provide those additional safeguards and protections provided in the Interim Cash Collateral Order.

27.     The Debtor requests that the Court find that the foregoing adequate protection to be granted to Senior Lender is reasonable and sufficient to protect its interests, without prejudice to the rights of Senior Lender to request additional adequate protection in the future.

## VIII.   The Interim Approval Should Be Granted

28.     Bankruptcy Rule 4001(b) governs the procedures for the use of cash collateral, and provides, in relevant part:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 15 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed.R.Bank.P. 4001(b)(2).

- 12 -

29.     Therefore, the Court is empowered to conduct a preliminary expedited hearing on

the Motion and authorize the use of cash collateral to the extent necessary to avoid immediate

and irreparable harm to the Debtor's estate.   The Debtor seeks entry of the Interim Cash

Collateral Order to avoid immediate and irreparable harm to its estate, its asset and its creditors.

This relief will enable the Debtor to operate its businesses in the ordinary course and to pay

necessary expenses and avoid immediate and irreparable harm to its estate pending the Final

Hearing.  Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Court is authorized to

grant the relief requested by this Motion.

### IX.     Notice With Respect to Interim Financing Order

30.     Notice of this Motion has been given to (a) the United States Trustee; (b) counsel

to Canyon Capital Realty Advisors LLC; (c) counsel to Credit Suisse First Boston Mortgage

Securities Corporation; (d) counsel to Wachovia Bank, N.A.; (e) counsel to The Falor

Companies; and (f) the Debtor's twenty (20) largest unsecured creditors.  The Debtor submits

that, under the circumstances, no further notice of the hearing is necessary and requests that any

further notice be dispensed with and waived.

### X.     Notice With Respect to Final Cash Collateral Order

31.     The Debtor further requests that the Court schedule the Final Hearing on the use

of Cash Collateral and authorize it to serve a copy of the signed Interim Cash Collateral Order,

which fixes the time and date for the Final Hearing and the date for filing of objections, by first-

class mail upon (a) the United States Trustee; (b) counsel to Canyon Capital Realty Advisors

LLC; (c) counsel to Credit Suisse First Boston Mortgage Securities Corporation; (d) counsel to

Wachovia Bank, N.A.; (e) counsel to The Falor Companies; (f) the Debtor's twenty (20) largest

unsecured creditors or counsel to any statutory committees appointed in this chapter 11 case, if

- 13 -

any; (g) any party who filed a request for notices in this chapter 11 case pursuant to Bankruptcy Rule 2002 prior to the date of service of the Interim Cash Collateral Order; and (h) any known lienholders of the Debtor. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 4001-2.

## XI.     No Prior Request

32.     No prior motion for the relief requested herein has been made to this or any other Court.

## XII.     Conclusion

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated:  October 31, 2007

CHICAGO H&S HOTEL PROPERTY, L.L.C.

By:     /s/     Daniel A. Zazove
        PERKINS COIE LLP
        Daniel A. Zazove (ARDC # 3104117)
        Jason D. Horwitz (ARDC # 6269962)
        131 S. Dearborn Street, Suite 1700
        Chicago, Illinois 60603-5559
        Telephone: 312.324.8400
        Facsimile: 312.324.9400
        e-mail:  dzazove@perkinscoie.com
        e-mail:  jhorwitz@perkinscoie.com

                - and -

        AKIN GUMP STRAUSS HAUER & FELD LLP
        Charles R. Gibbs
        1700 Pacific Avenue, Suite 4100
        Dallas, TX  75201
        Telephone:  214.969.2800
        Facsimile:  214.969.4343
        email:  cgibbs@akingump.com

        *Attorneys for the Debtor and Debtor in Possession*

- 14 -

## EXHIBIT A

26277-0005/LEGAL13689941.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| CHICAGO H&S HOTEL PROPERTY, L.L.C. | ) | Case No. 07-20088 |
|  | ) |  |
| Debtor. | ) | Hon. Eugene R. Wedoff |
|  | ) |  |
|  | ) |  |
|  | ) |  |

## INTERIM ORDER AUTHORIZING DEBTOR TO USE PREPETITION COLLATERAL, INCLUDING CASH COLLATERAL, AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363

Upon the motion (the "Motion"),[1] of the above-captioned debtor and debtor in possession (the "Debtor"), pursuant to sections 361, 362 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order authorizing the Debtor to use the prepetition collateral, including cash collateral, of Canyon Capital Realty Advisors LLC (the "Senior Lender") and providing adequate protection to Senior Lender; the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estates, its creditors and other parties-in-interest; and it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1]     Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion.

FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction.*   This Court has core jurisdiction over this bankruptcy case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice.*   Notice of this Motion has been given to (a) the United States Trustee; (b) counsel to Canyon Capital Realty Advisors LLC; (c) counsel to Credit Suisse First Boston Mortgage Securities Corporation; (d) counsel to Wachovia Bank, N.A.; (e) counsel to The Falor Companies; and (f) the Debtor's twenty (20) largest unsecured creditors.   Under the circumstances, such notice constitutes due and sufficient notice thereof.

3.     *Objections.*   All objections to the entry of this interim order (the "Interim Order"), if any, are resolved hereby or, to the extent not resolved, are overruled.

4.     *Senior Lender Representation.*   The Debtor is obligated to the Senior Lender, as assignee of Credit Suisse First Boston Mortgage Securities Corporation, which was the assignee of Column Financial, Inc., under that certain Loan Agreement, dated March 30, 2005, in the original principal amount of $100,785,289.00 (the "Senior Loan Agreement"). The senior loan is secured by (a) a first Mortgage and Security Agreement (the "Mortgage"), and (b) an Assignment of Leases and Rents (the "Rent Assignment," and together with the Senior Loan Agreement, the Mortgage and related documents, the "Senior Loan Documents"). For the purposes of this Interim Order, "Rents" mean all rents, rent equivalents, room revenues, income, receivables, revenues, insurance proceeds, deposits, charges for services rendered and any and all payment and consideration of whatever form or nature received by the Debtor or Senior Lender (including any predecessors, successors and assigns) arising from the operation of Hotel 71 from

2

any and all sources relating to the use, enjoyment and occupancy of the Property or any other definition of "rents" provided in the Senior Loan Documents. As of the Petition Date, the Debtor is obligated to Senior Lender in the principal amount of approximately $95 million.

5.      The Debtor acknowledges and represents that the Senior Lender has a validly perfected first lien, and that the Mortgage constitutes a legal, valid, binding and enforceable lien on assets of the Debtor; provided however, that any party in interest shall have a period of 75 days from the entry of this Interim Order and any official unsecured creditors committee (the "Committee"), if formed, shall have at least 60 days from the date of its formation to investigate the validity and perfection of such Senior Loan and liens. The Debtor acknowledges that the Senior Lender has taken all required steps and given all required notices to perfect its security interest in the Rents.

6.      *Use of Prepetition Collateral.* The Debtor is hereby authorized to use Senior Lender's cash collateral, including, but not limited to, that cash collateral relating to Rents at Hotel 71 (the "Cash Collateral"), pursuant to sections 361, 362 and 363 of the Bankruptcy Code and any other collateral in which Senior Lender has an interest (collectively with the Cash Collateral, the "Prepetition Collateral") solely to pay operating expenses of the hotel, including the Property manager, postpetition vendors, insurance, taxes and bankruptcy-related expenses, as more specifically described on the budget attached hereto as **Exhibit 1** (the "Budget"). The Debtor's use of the Prepetition Collateral is authorized only for the time period covered in the Budget, and may not be extended other than on the express written consent of the Senior Lender or order of the Court, other than as expressly provided below.

7.     *Adequate Protection.*  As adequate protection, the Debtor hereby grants to Senior Lender valid, binding, enforceable and perfected liens, mortgages and security interests in and to all of the Debtor's property and assets acquired after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, but excluding all causes of action under Chapter 5 of the Bankruptcy Code, which such liens shall be senior to all other liens and encumbrances other than any valid mechanics or similar liens or other senior liens. Additionally, the Debtor shall (a) continue to at all times keep the Prepetition Collateral insured to the extent required under the Senior Loan Documents, and (b) pay any and all postpetition taxes, assessments and governmental charges with respect to the Prepetition Collateral.  The security interests and liens created herein and confirmed hereby shall be valid, enforceable and perfected without any further action by the Senior Lender or the necessity of any filing or execution of documents which might otherwise be required under non-bankruptcy law.  Upon request by the Senior Lender, however, the Debtor shall execute and deliver to Senior Lender any financing statements or other documents as may be reasonably required by the Senior Lender.  Notwithstanding the adequate protection provided herein, if the Senior Lender has a claim arising from the stay of action against the Prepetition Collateral, or from the use, sale or lease of the Prepetition Collateral, then such claim shall be granted priority under section 507(b) to the extent of any such deficiency or claim.

8.     As further adequate protection, the Debtor shall provide to the Senior Lender reasonably detailed weekly reports of actual expenditures and income during the previous week.

9.     *Reservations of Rights.*  Nothing in this Interim Order shall prejudice the rights of the Senior Lender under the Bankruptcy Code and applicable non-bankruptcy law to (a) seek

4

further adequate protection; (b) propose or solicit acceptances of a plan of reorganization or liquidation following termination of the Debtor's exclusivity periods; provided however, that the Senior Lender shall not seek to terminate the Debtor's exclusivity periods; (c) object to or otherwise oppose any relief sought by any entity or party in this case; and (d) assert that the Debtor is obligated to pay to Senior Lender the default rate of interest and any other charges, penalties and costs required to be paid under the Senior Loan Documents for the period commencing on the Petition Date and continuing until all such amounts due under the Senior Loan Documents and hereunder are paid in full. Nothing in this Interim Order shall prejudice the rights of the Debtor to dispute any such arguments, actions, defenses, claims or otherwise.

10.     This Interim Order and the transactions contemplated hereby shall be without prejudice to any and all rights, remedies, claims and causes of action which the Senior Lender has or may have against any party who may be liable with the Debtor and otherwise under the Senior Loan Documents or any part thereof. Nothing contained herein shall be deemed to be an admission, or constitute evidence, in connection with any matter or proceeding other than the enforcement of the terms of this Interim Order, including, but not limited to, any subsequent motion or application for use of cash collateral or for approval of debtor in possession financing.

11.     *Termination of Use of Cash Collateral.*  Notwithstanding anything to the contrary contained herein, the Debtor's right to use the Cash Collateral shall expire on the earliest to occur of (the first such occurrence being hereinafter referred to as the "Termination Event"): (a) the final date contained in the Budget; (b) the entry by this Court of an order reversing, amending, supplementing, staying, vacating or otherwise modifying the terms of this Interim Order; (c) the conversion of the Debtor's bankruptcy case to a case under chapter 7 of the

5

Bankruptcy Code; (d) the appointment of a trustee or examiner or other representative with expanded powers for the Debtor; (e) the occurrence of the effective date or consummation of a plan of reorganization; and (f) the breach of any of the Debtor's obligations under this Interim Order. On and after the Termination Event, the Debtor shall immediately cease using any of the Cash Collateral; provided however, that the Debtor reserves the right to seek Court authorization to continue to use such Cash Collateral, and Senior Lender reserves the right to oppose such relief.

12.     *Budget.*  The Budget is hereby approved.  The Debtor and Senior Lender may amend the Budget at any time without further Court order.

13.     *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

14.     *Final* Hearing.  The hearing to approve the Debtor's use of the Prepetition Collateral, including Cash Collateral, on a final basis shall be _____, 2007 at _____.  Any objections to the Debtor's use of the Prepetition Collateral, including Cash Collateral, on a final basis or the entry of the Final Cash Collateral Order must be filed on or before _____, 2007 at 4:00 p.m.

Dated:_____


_____
United States Bankruptcy Judge

26277-0005/LEGAL13689771.3

**EXHIBIT 1**

26277-0005/LEGAL13689771.3

**HOTEL 71**
**Weekly Cash Flow**
*(Amounts in Thousands of Dollars)*

71

| week ended | 11/4 wk1 | 11/11 wk2 | 11/18 wk3 | 11/25 wk4 | 12/2 wk5 | 12/9 wk6 | 12/16 wk7 | 12/23 wk8 | 12/30 wk9 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Cash, beg | 200 | 429 | 234 | 332 | 189 | 310 | 383 | 414 | 213 | 200 |
| **Cash receipts:** | | | | | | | | | | |
| Hotel operations | 309 | 288 | 332 | 296 | 337 | 351 | 256 | 193 | 185 | 2,547 |
| Parking | - | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - | - |
| Total Cash Receipts | 309 | 288 | 332 | 296 | 337 | 351 | 256 | 193 | 185 | 2,547 |
| | | | | | | | | | | |
| **Disbursements - operations:** | | | | | | | | | | |
| 1 Payroll | - | 185 | - | 210 | - | 180 | - | 180 | - | 755 |
| 2 Benefits | - | 9 | - | 82 | - | - | - | 82 | - | 173 |
| 3 Other cost of sales | 11 | 12 | - | 9 | - | 16 | - | 19 | - | 67 |
| 4 Contract Services | - | 10 | - | 5 | - | 5 | - | 5 | - | 25 |
| 5 Credit card commission | 5 | 7 | 7 | 5 | 9 | 6 | 5 | 3 | 5 | 52 |
| 6 Elevators | - | - | 61 | - | 20 | - | 11 | - | 20 | 112 |
| 7 Licenses/Fees | - | - | 7 | - | - | - | 7 | - | - | 14 |
| 8 Insurance | | | | | | | | | | |
| Liability | - | 14 | - | - | - | 14 | - | - | - | 28 |
| Property | - | 33 | - | - | - | - | 33 | - | - | 66 |
| Worker's comp | 14 | - | - | 14 | - | - | - | - | - | 28 |
| 9 Laundry | 5 | 5 | - | 19 | - | - | - | - | 25 | 54 |
| 10 Legal fees | - | - | - | - | - | - | - | - | - | - |
| 11 Linens | 1 | 1 | - | 7 | - | - | - | - | 9 | 18 |
| 12 Maintenance | - | 5 | 8 | - | 5 | - | 5 | - | 5 | 28 |
| 13 Reservation services | - | - | - | 10 | - | - | - | - | 13 | 23 |
| 14 Sales & marketing | - | - | 29 | - | - | - | 28 | - | - | 57 |
| 15 Supplies | - | 14 | 5 | 8 | - | 8 | - | 8 | - | 43 |
| 16 Taxes - Occupancy (current) | 31 | 39 | 42 | 30 | 49 | 29 | 26 | 17 | 26 | 289 |
| 17 Taxes - Food & Bev Sales Tax | - | - | - | - | 10 | - | - | - | 18 | 28 |
| 18 Telephone/cable/Information Systems | - | 15 | - | - | 15 | - | - | - | - | 30 |
| 19 Travel agent commissions | - | - | 10 | - | 53 | - | - | - | - | 63 |
| 20 Utilities/security service | - | 50 | 40 | 20 | - | - | 40 | 20 | - | 170 |
| 21 West Paces | | | | | | | | | | |
| Management fee | - | 33 | - | - | 25 | - | - | - | 20 | 78 |
| Legal/other | - | 26 | - | - | 10 | - | - | - | 10 | 46 |
| 22 Other operating | 13 | 25 | 25 | 20 | 20 | 20 | 20 | 20 | 20 | 183 |
| 23 Professional fees | - | - | - | - | - | - | 50 | - | - | 50 |
| 24 U.S. Trustee fees | - | - | - | - | - | - | - | - | - | - |
| 25 Leases | - | - | - | - | - | - | - | 40 | 5 | 45 |
| Total | 80 | 483 | 234 | 439 | 216 | 278 | 225 | 394 | 176 | 2,525 |
| *Net Change in Cash from Ops* | 229 | (195) | 98 | (143) | 121 | 73 | 31 | (201) | 9 | 22 |
| Cash, ending | 429 | 234 | 332 | 189 | 310 | 383 | 414 | 213 | 222 | 222 |

Confidential

**HOTEL 71**
**Weekly Cash Flow**
*(Amounts in Thousands of Dollars)*

**71**

| | week ended | 11/4 wk1 | 11/11 wk2 | 11/18 wk3 | 11/25 wk4 | 12/2 wk5 | 12/9 wk6 | 12/16 wk7 | 12/23 wk8 | 12/30 wk9 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Accounts Receivable* | | | | | | | | | | | |
| **Beginning** | | 885 | 832 | 864 | 875 | 828 | 916 | 842 | 820 | 778 | 885 |
| Billings | | | | | | | | | | | |
| Room Sales | | 199 | 255 | 274 | 193 | 315 | 187 | 166 | 113 | 172 | 1,874 |
| Food & Bev | | 25 | 25 | 25 | 25 | 60 | 60 | 40 | 20 | 20 | 300 |
| Other | | 1 | 1 | 2 | 1 | 1 | 1 | 2 | 1 | 1 | 11 |
| Occupancy taxes | | 31 | 39 | 42 | 30 | 49 | 29 | 26 | 17 | 26 | 289 |
| Total Billings | | 256 | 320 | 343 | 249 | 425 | 277 | 234 | 151 | 219 | 2,474 |
| Cash receipts | | (309) | (288) | (332) | (296) | (337) | (351) | (256) | (193) | (185) | (2,547) |
| Write-off/ adjustments | | - | - | - | - | - | - | - | - | - | - |
| **Ending** | | 832 | 864 | 875 | 828 | 916 | 842 | 820 | 778 | 812 | 812 |

Assumptions:

1) Cash flow assumes occupancy taxes are paid the week they are collected, and assumes no payment of past due amounts.

2) Assumes no payment of property taxes, which are estimated to be $900k and payable the first of December.

3) Excludes payment of debtors professional fees: Akin Gump, Perkins Coie, DSI and JLL.

4) Assumes restricted occupancy through week 2 due to elevator service issues.

5) Assumes internet booking agent continues to pay in the normal course.

Confidential