IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re | ) Chapter 11 )|
| CHICAGO H&S HOTEL PROPERTY, L.L.C. | ) Case No. 07-20088 )|
| Debtor. | ) Hon. Eugene R. Wedoff ) )|
| | ) Hearing Date: November 6, 2007 ) Hearing Time: 10:00 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 6, 2007 at 10:00 a.m., or as soon thereafter as counsel may be heard, we will appear before the Honorable Eugene R. Wedoff, or any judge sitting in his stead, in Room 744 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and present the **DEBTOR'S MOTION FOR ORDER UNDER 11 U.S.C. §§ 345 AND 363 (I) AUTHORIZING CONTINUED USE AND MAINTENANCE OF EXISTING BANK ACCOUNTS AND CONTINUED USE OF EXISTING BUSINESS FORMS, AND (II) WAIVING INVESTMENT AND DEPOSIT REQUIREMENTS**, a copy of which is hereby served upon you.

Dated: November 1, 2007

CHICAGO H&S HOTEL PROPERTY, L.L.C.

By:   /s/   Daniel A. Zazove
PERKINS COIE LLP
Daniel A. Zazove (ARDC # 3104117)
Jason D. Horwitz (ARDC # 6269962)
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone: 312.324.8400
Facsimile: 312.324.9400
e-mail: dzazove@perkinscoie.com
e-mail: jhorwitz@perkinscoie.com

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP
Charles R. Gibbs
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343
email: cgibbs@akingump.com

*Attorneys for the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

I, Daniel A. Zazove, an attorney, certify that I caused to be served upon the parties named on the attached service list a true and correct copy of the **Notice of Motion** and **Debtor's Motion for Order Under 11 U.S.C. Sections 345 and 363(i) Authorizing Continued Use and Maintenance of Existing Bank Accounts and Continued Use of Existing Business Forms, and (ii) Waiving Investment and Deposit Requirements**, via electronic transmittal or overnight delivery, as indicated, by 5:00 p.m. on November 1, 2007.

Date: November 1, 2007

/s/ Daniel A. Zazove

**HOTEL 71**
**FIRST DAY SERVICE LIST**

| **Via E-mail:** | |
|---|---|
| **Roman Sukley**<br>Office of the U.S. Trustee, Region 11<br>227 W. Monroe Street<br>Suite 3350<br>Chicago, IL 60606<br>Email: roman.sukley@usdoj.gov | **Mark A. Jefferis**<br>**Anderson D. Caperton**<br>Cadwalader, Wickersham & Taft LLP<br>227 West Trade Street<br>Charlotte, NC 28202<br>Email: mark.jefferis@cwt.com<br>         anderson.caperton@cwt.com |
| **Paul R. Walker**<br>Sidley Austin LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br>Email: pwalker@sidley.com | **Cornelius P. Brown**<br>Cohon Raizes & Regal LLp<br>208 S. LaSalle Street, Suite 1860<br>Chicago, IL 60604<br>nbrown@cohonraizes.com |
| **David R. Kuney**<br>Sidley Austin LLP<br>1501 K. Street, N.W.<br>Washington, D.C. 20005<br>Email: dkuney@sidley.com | **Brad B. Erens**<br>**James A. White**<br>**Mark A. Cody**<br>Jones Day<br>77 Wacker Drive<br>Chicago, IL 60601<br>Email: bberens@jonesday.com<br>         jawhite@jonesday.com<br>         macody@jonesday.com |
| **David Neff**<br>DLA Piper US LLP<br>203 North LaSalle Street<br>Chicago, IL 60601<br>Email: David.Neff@dlapiper.com | **Scott A. Semenek**<br>**Jonathan W. Young**<br>Wildman Harrold Allex & Dixon<br>225 W. Wacker Drive<br>Chicago, IL 60606<br>Email: young@wildman.com<br>         semenek@wildman.com |
| Jonathan Strouse<br>**Les Meubles Saint Damase, Inc.**<br>Holland & Knight<br>131 S. Dearborn,<br>30th Floor<br>Chicago, IL 60603<br>Email: jonathan.strouse@hklaw.com | **Holland Neff O'Neil**<br>**Michael S. Haynes**<br>Gardere Wynn Sewell LLP<br>1601 Elm Street #3000<br>Dallas, TX 75201<br>Email: honeil@gardere.com<br>         mhaynes@gardere.com |

26277-0005/LEGAL13692295.3

## HOTEL 71
### FIRST DAY SERVICE LIST

| | |
|---|---|
| **Kim Andres, Esq.**<br>Associate General Counsel<br>Citi GCG Litigation Service Center<br>3950 Regent Blvd., Mail Stop S1B-135<br>Irving, TX 75063<br>Email: kim.andres@citi.com | |

26277-0005/LEGAL13692295.3

# HOTEL 71
## FIRST DAY SERVICE LIST

| **Via FedEx:** | |
|---|---|
| Robert Warman<br>**West Paces**<br>3384 Peachtree Road, Suite 375<br>Atlanta, GA 30326 | Deanna Schaffino<br>**Hudson Boiler**<br>1725 W. Hubbard Street<br>Chicago, IL 60622 |
| **Casa Madrona Hotel & Spa**<br>801 Bridgeway<br>Sausalito, CA 94965 | Jeff Lazar<br>**JL Furnishings**<br>3040 E. Maria Street<br>Rancho Dominguez, CA 90221 |
| Vicky Wallace<br>**Crane Revolving Door**<br>924 Sherwood Drive<br>Lake Bluff, IL 60044 | **Altour International**<br>1270 Avenue of the Americas<br>15th Floor<br>New York, New York 10020 |
| Kerri Castoro<br>**Life Fitness**<br>5100 N. River Road<br>Schiller Park, IL 60176 | Keri Kelly<br>**Travel Tech Group**<br>110 W. Hubbard<br>Chicago, IL 60610 |
| **Mid America Telephone Systems**<br>11643 S. Austin Avenue<br>Alsip, IL 60803 | John Nash<br>**TIG Global, LLC**<br>5335 Wisconsin Avenue NW, Suite 780<br>Washington, DC 20015 |
| Chris Caplette<br>**EEC Industries**<br>1237 Welch Street<br>North Vancouver V7P1B3<br>British Columbia | Attn Accounts Receivable<br>**Travel Escape, LLC**<br>d/b/a Expedia Travel<br>10190 Covington Cross Drive<br>Las Vegas, NV 89144 |
| Francois Geneve<br>**Francois Geneve Products**<br>2112 W. Grace Street<br>Chicago, IL 60618 | Kanika Richardson<br>**The Puckett Group, Inc.**<br>300 E. McBee Avenue<br>Greenville, SC 29601 |

26277-0005/LEGAL13692295.3

# HOTEL 71
## FIRST DAY SERVICE LIST

| | |
|---|---|
| Abe Assellini<br>**Midwest Contract Glazing**<br>3014 W. Fillmore<br>Chicago, IL 60612 | Adelaide DaCosta<br>**Sally Fourmy & Associaes**<br>30 Duncan Street, Floor 4<br>Toronto M5V2C2 ON<br>Canada |
| **Spargo & Associates**<br>Attn: Accounts Receivable<br>11212 Waples Mill Road, Suite 104<br>Fairfax, VA 22030 | Dave Zych<br>**Excel Freight**<br>17330 Preston Road<br>Suite 200DC<br>Dallas, TX 75252 |
| **Citibank**<br>Attn: Scott Shilling<br>500 W. Madison, 6th Floor<br>Chicago, IL 60661 | **Wachovia**<br>Attn: Lea Land<br>301 S. College Street<br>Charlotte, NC 28202-6000 |

26277-0005/LEGAL13692295.3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CHICAGO H&S HOTEL PROPERTY, L.L.C. | ) | Case No. 07-20088 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date:November 6, 2007 |
| | ) | Hearing Time: 10:00 a.m. |

**DEBTOR'S MOTION FOR ORDER UNDER 11 U.S.C. §§ 345 AND 363 (I) AUTHORIZING CONTINUED USE AND MAINTENANCE OF EXISTING BANK ACCOUNTS AND CONTINUED USE OF EXISTING BUSINESS FORMS, AND (II) WAIVING INVESTMENT AND DEPOSIT REQUIREMENTS**

Chicago H&S Hotel Property, L.L.C., (the "Debtor"), by its undersigned counsel, files this Motion for an Order (i) Authorizing the Debtor's Continued Use and Maintenance of its Existing Bank Accounts and Business Forms, and (ii) Waiving Investment and Deposit Requirements (the "Motion"). In support of this Motion, the Debtor respectfully represents as follows:

### I. Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 345 and 363 of title 11 of the United States Code (the "Bankruptcy Code").

-1-

26277-0005/LEGAL13653354.8

## II. Background

3. On October 29, 2007 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.[1] The Debtor owns and operates a 40 story, 437 guestroom, full service hotel at a prime downtown location in Chicago, Illinois adjacent to the Chicago River and Michigan Avenue known as Hotel 71 ("Hotel 71" or the "Property"). The Property was constructed as a luxury apartment complex in 1958 and was converted to a hotel in 1987.

4. In 2005, the Property was purchased by the Debtor with the express intention of converting it into a condominium hotel.[2] In order to acquire the Property and make the intended improvements the Debtor obtained a senior loan (the "Senior Loan") in the amount of $100,785,289.00 secured by a first mortgage on the Property, and the Debtor's parent, Chicago H&S Senior Investors, LLC (the "Equity Holder"), obtained a $27,338,801.00 mezzanine loan (the "Mezz Loan") from Hotel 71 Mezz Lender, L.L.C. (the "Mezz Lender"), which was secured by a pledge of the Equity Holder's 100% interest in the Debtor. Both the Senior Loan and the Mezz Loan are fully matured.

5. On July 16, 2007, the mortgage lender filed a foreclosure action with the Circuit Court of Cook County. On October 3, 2007, the Mezz Lender conducted a foreclosure sale of its collateral pursuant to Article 9 of the Uniform Commercial Code and purchased the Equity Holder's interest in the Debtor, making the Mezz Lender the 100%

---

[1] A more full description of the background of this bankruptcy case can be found in the Declaration of Patrick J. O'Malley in Support of Chapter 11 Petition and First Day Orders, filed contemporaneously herewith.

[2] A condominium hotel is one in which an individual may purchase a fee simple interest of a deeded condominium guestroom. When the owner is at the property, he or she may use all of the amenities and services of the hotel. When not on the premises, the owner may make the guestroom available for other hotel guests. Revenue generated through such rentals is shared between the unit owner and the hotel entity.

-2-

26277-0005/LEGAL13653354.8

owner of the Debtor.

6.   As of the Petition Date, only 78 of the 437 guestrooms have been renovated, 144 rooms are not in service and construction has not commenced on approximately one-third of the floors at the Property. Additionally, the Property is subject to more than 60 mechanic lien claims and the Debtor is a named defendant in more than a dozen lawsuits. The Debtor filed this chapter 11 case to stabilize the Property, resolve mechanic lien claims and facilitate a going concern sale of Hotel 71 pursuant to a chapter 11 plan. In furtherance of that goal, the Debtor has filed a motion seeking approval of a listing agreement with Jones Lang LaSalle Americas, Inc. to market and sell the Property.

### III.   Relief Requested

7.   By this Motion, the Debtor seeks an order (a) authorizing continued use and maintenance of its existing bank accounts and continued use of its existing business forms, and (b) waiving investment and deposit requirements.

### IV.   Basis For Relief

**A.   The Debtor Should Be Authorized To Continue To Use and Maintain Its Existing Bank Accounts**

8.   The Debtor's operations are funded primarily out of cash and credit card receipts from its hotel patrons. Prior to the Petition Date, these receipts were deposited daily into the Chicago H&S Hotel Property, d/b/a Hotel 71 deposit account with Citibank (the "Citibank Deposit Account"). Each evening, the Citibank Deposit Account was swept to the Chicago H&S Hotel Property, LLC for the Benefit of Column Financial, Inc. lockbox account with Wachovia (the "Wachovia Lockbox Account"). Wachovia is the servicer of the Debtor's Senior Loan.

-3-

9. Additionally, each week the Property assembled a weekly funding request for actual operating expenses with supporting documentation and submitted it to the Mezz Lender and Wachovia. Once the expenses were approved, a wire was sent from Wachovia to the Chicago H&S Hotel Property, d/b/a Hotel 71 operating account with Citibank (the "Citibank Operating Account," and together with the Citibank Deposit Account, the "Citibank Accounts"). The Debtor (through The West Paces Hotel Group, LLC ("West Paces"), the operator and manager of the Property) then made disbursements (usually in the form of a check) relating to the operating expenses from the Citibank Operating Account.

10. Finally, each Wednesday of a payroll week, an ADP summary page was sent to the Mezz Lender and Wachovia requesting payroll funds. Once they were approved, a wire was sent from Wachovia to a segregated payroll account maintained by West Paces. All of the employees working at Hotel 71 are employees of West Paces.

11. Contemporaneously herewith, the Debtor has filed a motion seeking authority to use its senior secured lender's (the "Senior Lender") cash collateral in accordance with a budget comprising the Debtor's anticipated operating expenses. Therefore, the Debtor requests that this Court enjoin Wachovia or the Senior Lender from sweeping funds from either of the Citibank Accounts postpetition, and authorize the Debtor to continue to maintain and use the Citibank Accounts during this bankruptcy case.

12. The Citibank Accounts allow for (a) overall corporate control of funds, and (b) certain cash availability when and where needed by the Debtor. The Debtor's smooth transition into chapter 11 will be greatly enhanced by its ability to maintain its Citibank Accounts without interruption. In addition, given that the goal of this case is an expedited

-4-

sale of the Property and then a wind-up of the Debtor's affairs, it would be impractical and inefficient for the Debtor to implement new accounts.

13. The Citibank Accounts include the necessary accounting controls to enable the Debtor to trace funds and ensure that all transactions are adequately documented and readily ascertainable. The Debtor will continue to maintain detailed records reflecting all transfers of funds.

14. Indeed, the operation of the Debtor's business requires continuation of the Citibank Accounts during the chapter 11 case. Opening new bank accounts would be expensive, would create unnecessary administrative burdens and would be disruptive to the Debtor's business operations, especially given the Debtor's intention to sell the Property and wind-down its operations in the near term. Consequently, maintenance of the existing Citibank Accounts is in the best interests of all creditors and other interested parties.

15. In furtherance of this goal, the Debtor requests that Citibank be authorized and directed to continue to administer the Citibank Accounts as they were maintained prepetition, without interruption and in the ordinary course of business, and to pay any and all checks, drafts, wires or automated clearing house transfers issued on the Citibank Accounts on account of any claims arising on or after the Petition Date so long as sufficient funds are in said bank accounts.

16. To effectuate the foregoing, the Debtor requests that Citibank be authorized and directed (a) to honor all representations from the Debtor as to which checks should be honored or dishonored, and (b) that any final payment made by Citibank prior to the Petition Date against any of the Citibank Accounts, or any instrument issued by Citibank on behalf of the Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to

-5-

be paid prepetition, whether or not actually debited from the Citibank Accounts prepetition.

17. The Office of the United States Trustee has established certain operating guidelines for debtors in possession in order to supervise the administration of chapter 11 cases. These guidelines require chapter 11 debtors to, among other things, (a) close all existing bank accounts and open new debtor in possession bank accounts; (b) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain checks for all debtor in possession accounts which bear the designation "Debtor in Possession," the bankruptcy case number and the type of accounts.

18. Before the Petition Date, the Debtor maintained the Citibank Accounts, through which it managed cash receipts and disbursements. A list of the Citibank Accounts, as well as the Wachovia Lockbox Account (together with the Citibank Accounts, the "Bank Accounts"), the purposes of the Bank Accounts and the Bank Account numbers, is attached as **Exhibit A** to the proposed order submitted herewith.

19. The Debtor is able to deposit, withdraw and otherwise transfer funds to, from and among the Citibank Accounts by various methods, including check, wire transfer, automated clearing house transfer, internal bank transfer and electronic funds transfer. Prior to the Petition Date, the Debtor completed hundreds of transactions per month through the Bank Accounts. The Debtor believes that Citibank is a financially-stable banking institution. The Debtor further believes that the amounts on deposit in the Citibank Accounts are insured by FDIC insurance or other appropriate government-guaranteed deposit protection insurance.

26277-0005/LEGAL13653354.8

20.     The Debtor seeks a waiver of the United States Trustee's requirement that the Citibank Accounts be closed and that new postpetition bank accounts be opened. If enforced in this case, such requirement would cause enormous disruption in the Debtor's businesses, thereby impairing its effort to sell the Property on an expedited basis. To avoid delays in payments to administrative creditors and to ensure as smooth a transition into chapter 11 as possible, it is important that the Debtor be permitted to maintain the Citibank Accounts and, when necessary, open new accounts and close existing accounts. This relief is also necessary to aid the Debtor in its efforts to consummate the asset sale.

21.     The Debtor represents that if the requested relief is granted, it will not pay, and Citibank will be directed not to pay, any debts incurred by the Debtor before the Petition Date other than as authorized by this Court. The Debtor will work closely with Citibank to ensure that appropriate procedures are in place so that checks issued before the Petition Date on account of obligations of the Debtor, but presented after the Petition Date, will not be honored absent approval from this Court.

22.     In other cases in this District, courts have recognized that strict enforcement of bank account closing requirements may not always be an efficient use of the Debtor's time and resources during the initial stages of a chapter 11 case. Accordingly, courts in this District have waived such requirements and replaced them with alternative procedures that provide the same protections. *See, e.g., In re National Steel Corporation*, Case No. 02-08699 (JHS) (Bankr. N.D.Ill. March 6, 2002); *K-Mart Corporation*, Case No. 02-02474 (SPS) (Bankr. N.D.Ill. Jan. 25, 2002); *Comdisco Inc.*, Case No. 01-24795 (RB) (Bankr. N.D.Ill. July 16, 2001); *Outboard Marine Corporation*, Case No. 00-37405 (EIK) (Bankr. N.D.Ill. Dec. 22, 2000); *SourceOne Wireless, Inc.*, Case No. 99-13841 (ERW) (Bankr.

N.D.Ill. Feb. 1, 2000). Moreover, given the importance of maintaining uninterrupted, on-going operations pending closing of a sale, it would be extremely inefficient to require the closing of the Debtor's existing Citibank Accounts.

23.     In sum, the Debtor requests that the Citibank Accounts be deemed debtor in possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period, be authorized.

B.    **The Debtor Should Be Granted Authority To Continue To Use Existing Business Forms And Checks**

24.     For the same reasons, and in order to minimize expenses to its estate, the Debtor also requests that it be authorized to continue to use all correspondence, business forms (including, but not limited to, letterheads, purchase orders and invoices) and checks existing immediately before the Petition Date without reference to the Debtor's status as a debtor in possession.

25.     Parties doing business with the Debtor undoubtedly will be aware of its status as a debtor in possession as a result of the notice of this case provided to virtually all of the Debtor's creditors. A requirement that the Debtor change its business forms would be expensive and burdensome to the Debtor's estate and extremely disruptive to the Debtor's operations. The costs and potential disruption are not justified given the fact that the Debtor anticipates closing on a sale of the Property within a relatively short period of time after commencing this case.

26.     For these reasons, the Debtor requests that it be authorized to use existing checks and business forms without being required to place the label "Debtor in Possession" on each. *See, e.g., In re Gold Standard Banking Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D.Ill.

-8-

26277-0005/LEGAL13653354.8

1995) (holding United States Trustee's requirement prohibiting issuance of checks without "debtor in possession" designation to be unenforceable). Courts in this District in other business cases have routinely granted the same or similar relief to chapter 11 debtors. *See, e.g., In re National Steel Corporation*, Case No. 02-08699 (JHS) (Bankr. N.D.Ill. March 6, 2002); *K-Mart Corporation*, Case No. 02-02474 (SPS) (Bankr. N.D.Ill. Jan. 22, 2002); *Comdisco Inc.*, Case No. 01-24795 (RB) (Bankr. N.D.Ill. July 16, 2001); *Outboard Marine Corporation*, Case No. 00-37405 (EIK) (Bankr. N.D.Ill. Dec. 22, 2000).

### C. Cause Exists for Waiving the Investment and Deposit Guidelines of Section 345

27. None of the funds held in the Bank Accounts are invested for the Debtor. Prior to the Petition Date, the Citibank Operating Account was funded by Wachovia only shortly before the Debtor wrote checks to fund daily operations. Additionally, the Citibank Deposit Account was a zero balance account in that it contained funds only during the intervening day or two between when funds were deposited into such account and when the funds were swept to the Wachovia Lockbox Account. And the funds in the Wachovia Lockbox Account were controlled by Wachovia for the Debtor's Senior Lender.

28. Bankruptcy Code section 345(a) authorizes deposits or investments of money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).

29. For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code section 345(b) provides that the estate must require from the entity with which the money is deposited or invested a

-9-

bond in favor of the United States secured by the undertaking of an adequate corporate surety.

30. A court may, however, relieve a debtor in possession of the restrictions imposed by Bankruptcy Code section 345(b) for "cause." To the extent necessary, the Debtor believes that "cause" exists to waive the investment and deposit restrictions under Bankruptcy Code section 345(b).

31. The Debtor believes that its use of the Citibank Accounts substantially conforms with the approved deposit or investment practices identified in Bankruptcy Code section 345. Nonetheless, out of an abundance of caution, to the extent that such deposits or investments do not conform with the approved deposit or investment practices identified in Bankruptcy Code section 345, the Debtor seeks to waive such requirements.

32. The Debtor submits that because (a) the maintenance of the Citibank Accounts at a financial institution insured or guaranteed by the United States or by a department, agency or instrumentality of the United States, and (b) the cash held in the Citibank Accounts is cash collateral of the Senior Lender, sufficient cause exists under Bankruptcy Code section 345(b) to allow the Debtor to deviate from the approved deposit and investment practices established by the Bankruptcy Code.

33. Courts have routinely approved the continued use of investment and deposit guidelines that do not strictly comply with section 345 of the Bankruptcy Code but that, as here, nevertheless are safe and prudent. *See, e.g., In re Haynes International, Inc.*, Case No. 04-5364 (AJM) (S.D. IN March 29, 2004); *In re Orius*, Case No. 02-45127 (BWB) (Bankr. N.D. Ill. Nov. 18, 2002); *In re National Steel Corporation*, Case No. 02-08699 (JHS)

(Bankr. N.D. Ill March 6, 2002); *In re K-Mart Corp.*, Case No. 02-02474 (SPS) (Bankr. N.D. Ill. Jan. 26, 2002).

## V. Notice

34. Notice of this Motion has been given to (a) the United States Trustee; (b) counsel to Canyon Capital Realty Advisors LLC; (c) counsel to Credit Suisse First Boston Mortgage Securities Corporation; (d) counsel to Wachovia Bank, N.A.; (e) counsel to The Falor Companies; (f) the Debtor's twenty (20) largest unsecured creditors; and (g) the Banks. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

## VI. No Prior Request

35. No prior motion for the relief requested herein has been made to this or any other Court.

## VII. Conclusion

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) authorizing continued use and maintenance of the existing Citibank Accounts and continued use of existing business forms; (ii) waiving any investment and deposit guidelines of section 345(b) of the Bankruptcy Code; and (iii) granting such other and further relief as is just and proper.

Dated: November 1, 2007

        CHICAGO H&S HOTEL PROPERTY, L.L.C.

By: /s/   Daniel A. Zazove
PERKINS COIE LLP
Daniel A. Zazove (ARDC # 3104117)
Jason D. Horwitz (ARDC # 6269962)
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone: 312.324.8400
Facsimile: 312.324.9400
e-mail: dzazove@perkinscoie.com
e-mail: jhorwitz@perkinscoie.com

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP
Charles R. Gibbs
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343
email: cgibbs@akingump.com

*Attorneys for the Debtor and Debtor in Possession*