IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re )<br>)<br>CHICAGO H&S HOTEL PROPERTY, L.L.C. )<br>)<br>Debtor. )<br>)<br>) <br>) | Chapter 11<br><br>Case No. 07-20088<br><br>Hon. Eugene R. Wedoff<br><br>Hearing Date: November 6, 2007<br>Hearing Time: 10:00 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 6, 2007 at 10:00 a.m., or as soon thereafter as counsel may be heard, we will appear before the Honorable Eugene R. Wedoff, or any judge sitting in his stead, in Room 744 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and present the **DEBTOR'S MOTION FOR AN ORDER (I) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICES AND (II) DEEMING THE UTILITY COMPANIES ADEQUATELY ASSURED OF PAYMENT**, a copy of which is hereby served upon you.

Dated: November 1, 2007

                                  CHICAGO H&S HOTEL PROPERTY, L.L.C.

                      By:    /s/    Daniel A. Zazove
                             PERKINS COIE LLP
                             Daniel A. Zazove (ARDC # 3104117)
                             Jason D. Horwitz (ARDC # 6269962)
                             131 S. Dearborn Street, Suite 1700
                             Chicago, Illinois 60603-5559
                             Telephone: 312.324.8400
                             Facsimile: 312.324.9400
                             e-mail: dzazove@perkinscoie.com
                             e-mail: jhorwitz@perkinscoie.com

                             - and -

                             AKIN GUMP STRAUSS HAUER & FELD LLP
                             Charles R. Gibbs
                             1700 Pacific Avenue, Suite 4100
                             Dallas, TX 75201
                             Telephone: 214.969.2800
                             Facsimile: 214.969.4343
                             email: cgibbs@akingump.com

                        *Attorneys for the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

  I, Daniel A. Zazove, an attorney, certify that I caused to be served upon the parties named on the attached service list a true and correct copy of the **Notice of Motion and Debtor's Motion for Order (i) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Services and (ii) Deeming the Utility Companies Adequately Assured of Payment**, via electronic transmittal or overnight delivery, as indicated, by 5:00 p.m. on November 1, 2007.

Date: November 1, 2007

            /s/ Daniel A. Zazove

**HOTEL 71**
**FIRST DAY SERVICE LIST**

| **Via FedEx:** | |
|---|---|
| Robert Warman<br>**West Paces**<br>3384 Peachtree Road, Suite 375<br>Atlanta, GA 30326 | Deanna Schaffino<br>**Hudson Boiler**<br>1725 W. Hubbard Street<br>Chicago, IL 60622 |
| **Casa Madrona Hotel & Spa**<br>801 Bridgeway<br>Sausalito, CA 94965 | Jeff Lazar<br>**JL Furnishings**<br>3040 E. Maria Street<br>Rancho Dominguez, CA 90221 |
| Vicky Wallace<br>**Crane Revolving Door**<br>924 Sherwood Drive<br>Lake Bluff, IL 60044 | **Altour International**<br>1270 Avenue of the Americas<br>15th Floor<br>New York, New York 10020 |
| Kerri Castoro<br>**Life Fitness**<br>5100 N. River Road<br>Schiller Park, IL 60176 | Keri Kelly<br>**Travel Tech Group**<br>110 W. Hubbard<br>Chicago, IL 60610 |
| **Mid America Telephone Systems**<br>11643 S. Austin Avenue<br>Alsip, IL 60803 | John Nash<br>**TIG Global, LLC**<br>5335 Wisconsin Avenue NW, Suite 780<br>Washington, DC 20015 |
| Chris Caplette<br>**EEC Industries**<br>1237 Welch Street<br>North Vancouver V7P1B3<br>British Columbia | Attn Accounts Receivable<br>**Travel Escape, LLC**<br>d/b/a Expedia Travel<br>10190 Covington Cross Drive<br>Las Vegas, NV 89144 |
| Francois Geneve<br>**Francois Geneve Products**<br>2112 W. Grace Street<br>Chicago, IL 60618 | Kanika Richardson<br>**The Puckett Group, Inc.**<br>300 E. McBee Avenue<br>Greenville, SC 29601 |

# HOTEL 71
## FIRST DAY SERVICE LIST

| | |
|---|---|
| Abe Assellini<br>**Midwest Contract Glazing**<br>3014 W. Fillmore<br>Chicago, IL 60612 | Adelaide DaCosta<br>**Sally Fourmy & Associaes**<br>30 Duncan Street, Floor 4<br>Toronto M5V2C2 ON<br>Canada |
| **Spargo & Associates**<br>Attn: Accounts Receivable<br>11212 Waples Mill Road, Suite 104<br>Fairfax, VA 22030 | Dave Zych<br>**Excel Freight**<br>17330 Preston Road<br>Suite 200DC<br>Dallas, TX 75252 |
| **AT&T**<br>600 Federal Street<br>Chicago, IL 60605 | **City of Chicago**<br>**Dept. of Water Management**<br>1000 E. Ohio Street<br>Chicago, IL 60611 |
| **ComEd**<br>4300 Winfield Rd<br>Warrenville, IL 60555 | **Lodgenet**<br>3900 W. Innovation St.<br>Sioux Falls, SD 57107 |
| **Peoples Gas**<br>**Integrys Energy Group**<br>130 E. Randolph Drive<br>Chicago, IL 60601 | **Qwest**<br>4350 Brownsboro Rd<br>Louisville, KY 40207 |
| **Waste Management**<br>1411 Opus Place<br>Downers Grove, IL 60515 | **World Cinema**<br>9801 Westheimer, Suite 4<br>Houston, TX 77042 |

26277-0005/LEGAL13692295.4

**HOTEL 71**
**FIRST DAY SERVICE LIST**

| **Via E-mail:** | |
|---|---|
| **Roman Sukley**<br>Office of the U.S. Trustee, Region 11<br>227 W. Monroe Street<br>Suite 3350<br>Chicago, IL 60606<br>Email: roman.sukley@usdoj.gov | **Mark A. Jefferis**<br>**Anderson D. Caperton**<br>Cadwalader, Wickersham & Taft LLP<br>227 West Trade Street<br>Charlotte, NC 28202<br>Email: mark.jefferis@cwt.com<br>anderson.caperton@cwt.com |
| **Paul R. Walker**<br>Sidley Austin LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br>Email: pwalker@sidley.com | **Cornelius P. Brown**<br>Cohon Raizes & Regal LLp<br>208 S. LaSalle Street, Suite 1860<br>Chicago, IL 60604<br>nbrown@cohonraizes.com |
| **David R. Kuney**<br>Sidley Austin LLP<br>1501 K. Street, N.W.<br>Washington, D.C. 20005<br>Email: dkuney@sidley.com | **Brad B. Erens**<br>**James A. White**<br>**Mark A. Cody**<br>Jones Day<br>77 Wacker Drive<br>Chicago, IL 60601<br>Email: bberens@jonesday.com<br>jawhite@jonesday.com<br>macody@jonesday.com |
| **David Neff**<br>DLA Piper US LLP<br>203 North LaSalle Street<br>Chicago, IL 60601<br>Email: David.Neff@dlapiper.com | **Scott A. Semenek**<br>**Jonathan W. Young**<br>Wildman Harrold Allex & Dixon<br>225 W. Wacker Drive<br>Chicago, IL 60606<br>Email: young@wildman.com<br>semenek@wildman.com |
| Jonathan Strouse<br>**Les Meubles Saint Damase, Inc.**<br>Holland & Knight<br>131 S. Dearborn,<br>30th Floor<br>Chicago, IL 60603<br>Email: jonathan.strouse@hklaw.com | **Holland Neff O'Neil**<br>**Michael S. Haynes**<br>Gardere Wynn Sewell LLP<br>1601 Elm Street #3000<br>Dallas, TX 75201<br>Email: honeil@gardere.com<br>mhaynes@gardere.com |

26277-0005/LEGAL13692295.4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CHICAGO H&S HOTEL PROPERTY, L.L.C. | ) | Case No. 07-20088 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date: November 6, 2007 |
| | ) | Hearing Time: 10:00 a.m. |

**DEBTOR'S MOTION FOR AN ORDER (I) PROHIBITING
UTILITY COMPANIES FROM ALTERING, REFUSING OR
DISCONTINUING SERVICES AND (II) DEEMING THE
UTILITY COMPANIES ADEQUATELY ASSURED OF PAYMENT**

Chicago H&S Hotel Property, L.L.C., (the "Debtor"), by its undersigned counsel, files this Motion for an Order (I) Prohibiting Utility Companies From Altering, Refusing or Discontinuing Services and (II) Deeming the Utility Companies Adequately Assured of Payment (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

### I. Jurisdiction

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested in the Motion is authorized under Section 366 of title 11 of the United States Code (the "Bankruptcy Code").

26277-0005/LEGAL13647100.8

1

## II. Background

2.  On October 29, 2007 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.[1] The Debtor owns and operates a 40 story, 437 guestroom, full service hotel at a prime downtown location in Chicago, Illinois adjacent to the Chicago River and Michigan Avenue known as Hotel 71 ("Hotel 71" or the "Property"). The Property was constructed as a luxury apartment complex in 1958 and was converted to a hotel in 1987.

3.  In 2005, the Property was purchased by the Debtor with the express intention of converting it into a condominium hotel.[2] In order to acquire the Property and make the intended improvements the Debtor obtained a senior loan (the "Senior Loan") in the amount of $100,785,289.00 secured by a first mortgage on the Property, and the Debtor's parent, Chicago H&S Senior Investors, LLC (the "Equity Holder"), obtained a $27,338,801.00 mezzanine loan (the "Mezz Loan") from Hotel 71 Mezz Lender, L.L.C. (the "Mezz Lender"), which was secured by a pledge of the Equity Holder's 100% interest in the Debtor. Both the Senior Loan and the Mezz Loan are fully matured.

4.  On July 16, 2007, the mortgage lender filed a foreclosure action with the Circuit Court of Cook County. On October 3, 2007, the Mezz Lender conducted a foreclosure sale of its

---

[1] A more full description of the background of this bankruptcy case can be found in the Declaration of Patrick J. O'Malley in Support of Chapter 11 Petition and First Day Orders, filed contemporaneously herewith.

[2] A condominium hotel is one in which an individual may purchase a fee simple interest of a deeded condominium guestroom. When the owner is at the property, he or she may use all of the amenities and services of the hotel. When not on the premises, the owner may make the guestroom available for other hotel guests. Revenue generated through such rentals is shared between the unit owner and the hotel entity.

26277-0005/LEGAL13647100.8                                    2

collateral pursuant to Article 9 of the Uniform Commercial Code and purchased the Equity Holder's interest in the Debtor, making the Mezz Lender the 100% owner of the Debtor.

5. As of the Petition Date, only 78 of the 437 guestrooms have been renovated, 144 rooms are not in service and construction has not commenced on approximately one-third of the floors at the Property. Additionally, the Property is subject to more than 60 mechanic lien claims and the Debtor is a named defendant in more than a dozen lawsuits. The Debtor filed this chapter 11 case to stabilize the Property, resolve mechanic lien claims and facilitate a going concern sale of Hotel 71 pursuant to a chapter 11 plan. In furtherance of that goal, the Debtor has filed a motion seeking approval of a listing agreement with Jones Lang LaSalle Americas, Inc. to market and sell the Property.

### III. Relief Requested

6. In connection with the operation of its business, the Debtor obtains service from approximately eight different utilities (the "Utilities")[3] for, among other things, water, sewage, natural gas, electricity and telecommunications (collectively, the "Utility Services"), and spends approximately $47,600.00 per month on utility costs. A list of the names and addresses of all or substantially all of the Utilities providing services to the Debtor as of the Petition Date is attached to the draft order as **Exhibit A**. The relief requested by this motion relates to all Utilities, not only those identified on **Exhibit A**.

7. By this Motion, the Debtor seeks the entry of an order (the "Utility Order") (a) enjoining the Utilities from interfering with, disturbing, or discontinuing services to the Debtor

---

[3] Nothing herein shall be deemed an admission that any of the Utilities constitute "utilities" for purposes of Section 366 of the Bankruptcy Code. To the extent some of the entities listed in **Exhibit A** provide services to the Debtor in a capacity other than that of a utility, with respect to any such goods or services, such entities are not entitled to adequate assurance under Section 366 of the Bankruptcy Code.

on account of any unpaid invoice for prepetition services; and (b) providing that prepayment of Utilities, as provided by the draft order, constitutes adequate assurance of payment under Section 366 of the Bankruptcy Code.

### IV.  The Proposed Adequate Assurance

8.  Uninterrupted Utility Service is critical to the Debtor's ability to maintain its business as a going concern. Should the Utilities refuse or discontinue service, even for a brief period, the Debtor's operations would be severely disrupted, harming the Debtor's business and its opportunity to sell its assets. It is, therefore, critical that utility service continue uninterrupted.

9.  Although the Debtor anticipates that cash flow from ongoing operations will be sufficient to allow it to satisfy all administrative expenses, including postpetition utility bills, on a current basis, the Debtor further proposes to adequately assure the Utility Companies by prepaying for postpetition Utility Services.

10. Specifically, the Debtor proposes to adequately assure each Utility as follows:

> (a)  upon the earlier of (i) fifteen (15) days following the Petition Date, or (ii) the payment due date of the first invoice after the Petition Date, the Debtor will prepay its good faith estimate of the prorated utility usage for the month of November 2007.
>
> (b)  thereafter, beginning on December 1, 2007, the Debtor shall make a prepayment of utility usage for the current month on the first business day of each month. The prepayment shall be equal to the monthly average of the previous three (3) months' invoices actually received by the Debtor. By way of example, if on December 1, 2007 the Debtor has not yet received an invoice for services provided in November 2007, then the prepayment due on December 1, 2007 would be the average of the August 2007, September 2007, and October 2007 invoices.
>
> (c)  if the prepayment exceeds actual usage for the applicable time period, the Utility may retain the overpayment, but the Debtor may reduce the prepayment for the following month by the overpayment balance; however, if the actual charges exceed the prepayment, the Debtor will pay

the balance to the Utility Company within ten (10) days after the Debtor receives the invoice.

(d) the Debtor will continue to prepay for Utility Services as described above until the earlier of the Debtor (i) selling the Property, or (ii) terminating the Utility Service, at which time the Debtor and the Utility Company will perform a final true-up of the actual services and payments made.

11. However, if any Utility is holding a security deposit provided by the Debtor prior to the Petition Date, and such Utility elects to properly recover or set off any postpetition amounts owed against such security deposit, the Debtor requests that the Utility's recovery from the security deposit for postpetition amounts be in lieu of the Debtor's offer to prepay for Utility Services, and the Utility be deemed adequately assured.

12. Although the Debtor has made every attempt to identify any and all Utilities, certain Utilities that currently provide utility services for the Debtor may not be listed on **Exhibit A**. Accordingly, the Debtor also requests that the Court (a) authorize the Debtor to provide notice and a copy of the Utility Order to Utilities not listed on **Exhibit A**, as such Utilities are identified, and (b) provide that these additional Utilities are subject to the terms of the Utility Order.

### V.     Basis for Relief

13. Uninterrupted Utility Services are essential to ongoing operations and, therefore, to the success of the Debtor's reorganization. If the Utilities are permitted to terminate Utility Services, even for a short time, the Debtor's operations will suffer severe disruptions and the Debtor will either be forced to shut down operations or pay any amounts demanded by the Utilities to avoid the cessation of necessary and critical Utility Services. This result is clearly inconsistent with the rehabilitative goals of the Bankruptcy Code.

14. The policy underlying Section 366 of the Bankruptcy Code is to protect a debtor from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing Utilities with adequate assurance that debtor will pay for postpetition services. *See,* H.R. REP. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. In that regard, Section 366 of the Bankruptcy Code provides as follows:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of a deposit or other security necessary to provide adequate assurance of payment.
>
> * * * *
>
> (c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

11 U.S.C. § 366. Following the 30th day after the Petition Date, Section 366 of the Bankruptcy Code contemplates that a Utility Company may discontinue service to the Debtor, *but only if* the Debtor does not provide adequate assurance of payment of its postpetition obligation.

15. The enactment of the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005" ("BAPCPA") which was signed into law on April 20, 2005 and became applicable to cases filed after October 17, 2005, codifies that the term "assurance of payment" means "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; *(v) a*

*prepayment of utility consumption*; and (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1)(A) (emphasis added).

16. Under BAPCPA, however, utilities were not given the unfettered right to demand assurance of payment beyond what the Court ultimately determines is reasonable. To the contrary, Section 366(c)(3) of the Bankruptcy Code specifically preserves the Court's ability to review (and modify if appropriate) assurance of payment demands made by a Utility Company.

17. In the present case, the Debtor has agreed to prepay all Utility Companies. The Debtor proposes that its payment in advance constitutes adequate assurance under Section 366(c)(1)(A)(v) of the Bankruptcy Code. Alternatively, if a Utility Company forgoes the prepayment option and instead elects to properly set off against a security deposit it was provided by the Debtor prepetition, such Utility Company is adequately assured under Section 366(c)(1)(A)(i) and (vi) of the Bankruptcy Code.

18. Sections 366(b) and (c)(3) of the Bankruptcy Code expressly empowers the Court to review and, if necessary, alter demands for adequate assurance by Utility Companies. Bankruptcy courts thus have the exclusive responsibility for determining what constitutes adequate assurance for payment of postpetition utility charges, and are not bound by local or state regulations. *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002).

19. While BAPCPA has refined the factors that a court can consider in determining the existence of adequate assurance, the pre-BAPCPA case law is still applicable in that the court's role as the ultimate arbiter of adequate assurance has not changed under BAPCPA. "Adequate assurance" under the current language of Section 366 of the Bankruptcy Code is not synonymous with "adequate protection." In determining adequate assurance, the Court is not required to give the Utility Companies the equivalent of a guaranty of postpetition payment, but

must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services. *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. at 80; *In re Caldor, Inc.*, 199 B.R. 1,3 (S.D.N.Y. 1996); *In re Santa Clara Circuits West, Inc.*, 27 B.R. 680, 685 (Bankr. D. Utah 1982); *In re George C. Frye Co.*, 7 B.R. 856, 858 (Bankr. D. Me. 1980). Whether a utility is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case. *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. at 80.

20. Here, where the Debtor anticipates an expedited sale process and will prepay for Utility Services, it cannot be seriously contended that the Debtor has not made adequate assurance of payment. The Debtor's proposed method of furnishing adequate assurance of payment for postpetition Utility Services is in keeping with the spirit and intent of Section 366 of the Bankruptcy Code, is not prejudicial to the rights of any Utility, and is in the best interest of the Debtor's estate.

21. Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, is in the best interest of its estate and creditors and should be granted in all respects.

## VI. <u>Notice</u>

22. Notice of this Motion has been given to (a) the United States Trustee; (b) counsel to Canyon Capital Realty Advisors LLC; (c) counsel to Credit Suisse First Boston Mortgage Securities Corporation; (d) counsel to Wachovia Bank, N.A.; (e) counsel to The Falor Companies; (f) the Debtor's twenty (20) largest unsecured creditors; and (g) the Utility Companies. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

## VII. No Prior Request

23. No prior motion for the relief requested herein has been made to this or any other court.

## VIII. Conclusion

WHEREFORE, the Debtor respectfully requests that the Court enter an Order (a) prohibiting the Utility Companies from altering, refusing or discontinuing service on account of prepetition invoices, (b) providing that the Utility Companies are adequately protected under section 366 of the Bankruptcy Code, and (c) granting such other and further relief as is just and proper.

Dated: November 1, 2007

        CHICAGO H&S HOTEL PROPERTY, L.L.C.

By:   /s/    Daniel A. Zazove
PERKINS COIE LLP
Daniel A. Zazove (ARDC # 3104117)
Jason D. Horwitz (ARDC # 6269962)
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone: 312.324.8400
Facsimile: 312.324.9400
e-mail: dzazove@perkinscoie.com
e-mail: jhorwitz@perkinscoie.com

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP
Charles R. Gibbs
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343
email: cgibbs@akingump.com

*Attorneys for the Debtor and Debtor in Possession*