IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| CHICAGO H&S HOTEL PROPERTY, L.L.C. | ) Case No. 07-20088 |
| | ) |
| Debtor. | ) Hon. Eugene R. Wedoff |
| | ) |
| | ) Hearing Date: November 6, 2007 |
| | ) Hearing Time: 10:00 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 6, 2007 at 10:00 a.m., or as soon thereafter as counsel may be heard, we will appear before the Honorable Eugene R. Wedoff, or any judge sitting in his stead, in Room 744 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and present the **DEBTOR'S MOTION TO HONOR OBLIGATIONS UNDER THE WEST PACES HOTEL GROUP, LLC AGREEMENT AND AMEND THE TERMINATION DATE**, a copy of which is hereby served upon you.

Dated: November 1, 2007

CHICAGO H&S HOTEL PROPERTY, L.L.C.

By:   /s/   Daniel A. Zazove
PERKINS COIE LLP
Daniel A. Zazove (ARDC # 3104117)
Jason D. Horwitz (ARDC # 6269962)
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone: 312.324.8400
Facsimile: 312.324.9400
e-mail: dzazove@perkinscoie.com
e-mail: jhorwitz@perkinscoie.com

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP
Charles R. Gibbs
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343
email: cgibbs@akingump.com

*Attorneys for the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

      I, Daniel A. Zazove, an attorney, certify that I caused to be served upon the parties named on the attached service list a true and correct copy of the **Notice of Motion** and **Debtor's Motion to Honor Obligations Under the West Paces Hotel Group, LLC Agreement**, via electronic transmittal or overnight delivery, as indicated, by 5:00 p.m. on November 1, 2007.

Date: November 1, 2007

                                        /s/ Daniel A. Zazove

26277-0005/LEGAL13698397.1

**HOTEL 71**
**FIRST DAY SERVICE LIST**

| **Via FedEx:** | |
|---|---|
| Robert Warman<br>**West Paces**<br>3384 Peachtree Road, Suite 375<br>Atlanta, GA 30326 | Deanna Schaffino<br>**Hudson Boiler**<br>1725 W. Hubbard Street<br>Chicago, IL 60622 |
| **Casa Madrona Hotel & Spa**<br>801 Bridgeway<br>Sausalito, CA 94965 | Jeff Lazar<br>**JL Furnishings**<br>3040 E. Maria Street<br>Rancho Dominguez, CA 90221 |
| Vicky Wallace<br>**Crane Revolving Door**<br>924 Sherwood Drive<br>Lake Bluff, IL 60044 | **Altour International**<br>1270 Avenue of the Americas<br>15th Floor<br>New York, New York 10020 |
| Kerri Castoro<br>**Life Fitness**<br>5100 N. River Road<br>Schiller Park, IL 60176 | Keri Kelly<br>**Travel Tech Group**<br>110 W. Hubbard<br>Chicago, IL 60610 |
| **Mid America Telephone Systems**<br>11643 S. Austin Avenue<br>Alsip, IL 60803 | John Nash<br>**TIG Global, LLC**<br>5335 Wisconsin Avenue NW, Suite 780<br>Washington, DC 20015 |
| Chris Caplette<br>**EEC Industries**<br>1237 Welch Street<br>North Vancouver V7P1B3<br>British Columbia | Attn Accounts Receivable<br>**Travel Escape, LLC**<br>d/b/a Expedia Travel<br>10190 Covington Cross Drive<br>Las Vegas, NV 89144 |
| Francois Geneve<br>**Francois Geneve Products**<br>2112 W. Grace Street<br>Chicago, IL 60618 | Kanika Richardson<br>**The Puckett Group, Inc.**<br>300 E. McBee Avenue<br>Greenville, SC 29601 |

26277-0005/LEGAL13692295.2

**HOTEL 71**
**FIRST DAY SERVICE LIST**

| | |
|---|---|
| Abe Assellini<br>**Midwest Contract Glazing**<br>3014 W. Fillmore<br>Chicago, IL 60612 | Adelaide DaCosta<br>**Sally Fourmy & Associaes**<br>30 Duncan Street, Floor 4<br>Toronto M5V2C2 ON<br>Canada |
| **Spargo & Associates**<br>Attn: Accounts Receivable<br>11212 Waples Mill Road, Suite 104<br>Fairfax, VA 22030 | Dave Zych<br>**Excel Freight**<br>17330 Preston Road<br>Suite 200DC<br>Dallas, TX 75252 |

26277-0005/LEGAL13692295.2

**HOTEL 71**
**FIRST DAY SERVICE LIST**

| **Via E-mail:** | |
|---|---|
| **Roman Sukley**<br>Office of the U.S. Trustee, Region 11<br>227 W. Monroe Street<br>Suite 3350<br>Chicago, IL 60606<br>Email: roman.sukley@usdoj.gov | **Mark A. Jefferis**<br>**Anderson D. Caperton**<br>Cadwalader, Wickersham & Taft LLP<br>227 West Trade Street<br>Charlotte, NC 28202<br>Email: mark.jefferis@cwt.com<br>anderson.caperton@cwt.com |
| **Paul R. Walker**<br>Sidley Austin LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br>Email: pwalker@sidley.com | **Cornelius P. Brown**<br>Cohon Raizes & Regal LLp<br>208 S. LaSalle Street, Suite 1860<br>Chicago, IL 60604<br>nbrown@cohonraizes.com |
| **David R. Kuney**<br>Sidley Austin LLP<br>1501 K. Street, N.W.<br>Washington, D.C. 20005<br>Email: dkuney@sidley.com | **Brad B. Erens**<br>**James A. White**<br>**Mark A. Cody**<br>Jones Day<br>77 Wacker Drive<br>Chicago, IL 60601<br>Email: bberens@jonesday.com<br>jawhite@jonesday.com<br>macody@jonesday.com |
| **David Neff**<br>DLA Piper US LLP<br>203 North LaSalle Street<br>Chicago, IL 60601<br>Email: David.Neff@dlapiper.com | **Scott A. Semenek**<br>**Jonathan W. Young**<br>Wildman Harrold Allex & Dixon<br>225 W. Wacker Drive<br>Chicago, IL 60606<br>Email: young@wildman.com<br>semenek@wildman.com |
| Jonathan Strouse<br>**Les Meubles Saint Damase, Inc.**<br>Holland & Knight<br>131 S. Dearborn,<br>30th Floor<br>Chicago, IL 60603<br>Email: jonathan.strouse@hklaw.com | **Holland Neff O'Neil**<br>**Michael S. Haynes**<br>Gardere Wynn Sewell LLP<br>1601 Elm Street #3000<br>Dallas, TX 75201<br>Email: honeil@gardere.com<br>mhaynes@gardere.com |

3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| CHICAGO H&S HOTEL PROPERTY, L.L.C. ) | Case No. 07-20088 |
| ) | |
| Debtor. ) | Hon. Eugene R. Wedoff |
| ) | |
| ) | Hearing Date: November 6, 2007 |
| ) | Hearing Time: 10:00 a.m. |

**DEBTOR'S MOTION TO HONOR OBLIGATIONS UNDER THE WEST PACES HOTEL GROUP, LLC AGREEMENT AND AMEND THE TERMINATION DATE**

Chicago H&S Hotel Property, L.L.C., (the "Debtor"), by its undersigned counsel, files this Motion to Honor Obligations Under The West Paces Hotel Group, LLC Agreement and Amend the Termination Date (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

### I. Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested in the Motion may be granted pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code").

### II. Background

2. On October 29, 2007 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.[1] The Debtor owns and operates a 40 story, 437 guestroom, full service hotel at a prime downtown location in Chicago, Illinois adjacent to

---

[1] A more full description of the background of this bankruptcy case can be found in the Declaration of Patrick J. O'Malley in Support of Chapter 11 Petition and First Day Orders, filed contemporaneously herewith.

26277-0005/LEGAL13660957.9                                2

the Chicago River and Michigan Avenue known as Hotel 71 ("Hotel 71" or the "Property"). The Property was constructed as a luxury apartment complex in 1958 and was converted to a hotel in 1987.

3.  In 2005, the Property was purchased by the Debtor with the express intention of converting it into a condominium hotel.[2] In order to acquire the Property and make the intended improvements the Debtor obtained a senior loan (the "Senior Loan") in the amount of $100,785,289.00 secured by a first mortgage on the Property, and the Debtor's parent, Chicago H&S Senior Investors, LLC (the "Equity Holder"), obtained a $27,338,801.00 mezzanine loan (the "Mezz Loan") from Hotel 71 Mezz Lender, L.L.C. (the "Mezz Lender"), which was secured by a pledge of the Equity Holder's 100% interest in the Debtor. Both the Senior Loan and the Mezz Loan are fully matured.

4.  On July 16, 2007, the mortgage lender filed a foreclosure action with the Circuit Court of Cook County. On October 3, 2007, the Mezz Lender conducted a foreclosure sale of its collateral pursuant to Article 9 of the Uniform Commercial Code and purchased the Equity Holder's interest in the Debtor, making the Mezz Lender the 100% owner of the Debtor.

5.  As of the Petition Date, only 78 of the 437 guestrooms have been renovated, 144 rooms are not in service and construction has not commenced on approximately one-third of the floors at the Property. Additionally, the Property is subject to more than 60 mechanic lien claims and the Debtor is a named defendant in more than a dozen lawsuits. The Debtor filed this chapter 11 case to stabilize the Property, resolve mechanic lien claims and facilitate a going concern sale of Hotel 71 pursuant to a chapter 11 plan. In furtherance of that goal, the Debtor

---

[2]   A condominium hotel is one in which an individual may purchase a fee simple interest of a deeded condominium guestroom. When the owner is at the property, he or she may use all of the amenities and services of the hotel. When not on the premises, the owner may make the

has filed a motion seeking approval of a listing agreement with Jones Lang LaSalle Americas, Inc. to market and sell the Property.

### III. Relief Requested

6. On May 14, 2005, the Debtor entered into an Operating Agreement (the "Operating Agreement") with The West Paces Hotel Group, LLC ("West Paces") for the exclusive management and operation of Hotel 71. On that same date, the Debtor, the Mezz Lender, the Equity Holder and West Paces entered into a Recognition and Subordination Agreement (the "Subordination Agreement," and together with the Operating Agreement, the "Agreements"). Specifically, the Operating Agreement provides that West Paces shall provide, among other things, the following services to the Debtor:

   a. select, appoint, supervise, hire, promote, direct, train and fire the general manager and all other hotel employees, all of which shall be employees of West Paces;

   b. establish pay scales, staffing levels, labor policies and employee benefit programs for all hotel employees;

   c. provide hotel related services, such as room service, laundry valet, valet parking, concierge services and housecleaning;

   d. perform all bookkeeping, accounting and all other work relating to the hotel employees;

   e. determine the charges for rooms, commercial space and other amenities and services;

   f. establish entertainment and amusement policies and food and beverage policies, including catering operations;

   g. purchase all inventories;

   h. cause all needed repairs and maintenance to be made to the hotel, as well as minor alterations; and

---

guestroom available for other hotel guests. Revenue generated through such rentals is shared between the unit owner and the hotel entity.

      i.      apply for and obtain all licenses and permits required by law in connection with the management, occupancy, operation and maintenance of the hotel.

7. Under the Operating Agreement, West Paces is entitled to 2% of the gross revenues generated by the hotel, and is payable monthly. The costs of operating the Property and any expenses incurred by West Paces (including its attorneys' fees) are borne exclusively by the Debtor. These costs and expenses are paid from the gross revenues of Hotel 71, and to the extent the revenues are insufficient, such funds are required to be paid by the Debtor. Additionally, prior to the Petition Date, the Debtor deposited $200,000 (the "Deposit") into a segregated payroll account maintained by West Paces to cover any payroll for West Paces's employees that the Debtor fails to fund. The Deposit is property of the estate. As of the Petition Date, the Debtor owes West Paces approximately $59,200 for management fees and miscellaneous expenses and $110,000 for wages and employee benefits.

8. According to section 12 of the Subordination Agreement, the Operating Agreement terminates on the 90th day after the Mezz Lender acquired the Debtor (or January 1, 2008), without the payment of any fee, penalty or other consideration whatsoever. The Debtor seeks approval of a letter agreement extending the termination date such that the Operating Agreement will remain in effect pending the sale of the Property, and will terminate upon the closing without the payment of any fee, penalty or other consideration whatsoever. The parties are in the process of negotiating the amendment, and once it is completed the Debtor will file it with the Court.

9. The Debtor submits that allowing the Operating Agreement to terminate is in the best interests of the estate and its creditors because the Property will be more marketable – and thus will generate a greater return – free of the obligations to West Paces under the Operating Agreement. Therefore, the successful purchaser will have the opportunity to retain West Paces under a new management agreement, engage a different property manager or manage the

Property itself. In any event, terminating the Operating Agreement in accordance with its terms will also eliminate any claim West Paces could assert against the Debtor relating to a rejection of the agreement. Despite the prospective termination, West Paces continues to perform all of its obligations under the Operating Agreement.

10.     It is also in the best interests of the estate and its creditors to extend the termination date until sale closing. Absent an extension, the Operating Agreement will terminate on January 1, 2008, several weeks prior to the expected closing date of a sale. If the agreement is not extended, the Debtor will either be left without a manager to operate Hotel 71 through the closing date or will be required to engage a new management company for a very short period of time. And even if the Debtor is able to locate a replacement management company for only a few weeks, it will likely be more expensive than West Paces while the new company learns the business and the operations of Hotel 71 – additional expenses a debtor should avoid if at all possible.

### IV.    Basis for Relief

11.    This Court may authorize the Debtor's payment of obligations, including prepetition obligations, under the Operating Agreement pursuant to Section 363(b)(1) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code authorizes a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b)(1). Although stated various ways, courts generally hold that a debtor's decision to enter into a transaction outside of the ordinary course of business is governed by the business judgment standard. 3 Collier on Bankruptcy ¶ 363.01[1][g] (15th ed. 2002); *See In re U.S. Airways Group, Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002).

12. When applying the "business judgment" rule, courts show great deference to the debtor's decision making. *See, e.g., In re Castre*, 312 B.R. 426, 430 (Bankr. D. Colo. 2004); *In re Murphy*, 288 B.R. 1, 5 (D. Me. 2002); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998); *In re First Wellington Canyon Assoc.*, No. 89C593, 1989 WL 165028 at *1 (N.D. Ill. Dec. 28, 1989); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

13. The Debtor submits that the continued services of West Paces is critical to the operations of the Property pending its sale, which in turn is essential to maximizing the estate's value for all of the Debtor's creditors and parties in interest. Because the Operating Agreement will terminate, if the Debtor does not pay all amounts owed to West Paces or extend the termination date, it is concerned that West Paces will cease its continuing performance under the Operating Agreement, leaving the Debtor without a workforce to operate the hotel and generate revenue, ultimately resulting in Hotel 71 shutting its doors. Such a result would be catastrophic to the value of the Property, which can only maximize its price through a going concern sale. Indeed, even if West Paces stops performing under the Operating Agreement for a short period of time, the effect on the sale could be significant. Therefore, it is in the best interest of the Debtor's estate to pay such claims in the ordinary course of business and to extend the termination date until the sale closes.

14. Section 363(b)(1) authorizes a debtor to use estate property other than in the ordinary course of business if there is a sound business justification for doing so. Here, there can be little doubt that paying the West Paces obligations on a current basis is a reasonable exercise of the Debtor's business judgment. If the Debtor is unable to honor its obligations to West Paces, including employee-related obligations, West Paces could effectively shut down the hotel's operations, severely reducing the value of the Property. Indeed, given the relatively small

prepetition amount owed, the value preserved for the estate far exceeds the cost of honoring the Operating Agreement.

15.     In sum, the payment of the Debtor's prepetition obligations under the West Paces Operating Agreement and extending the termination date is necessary for the hotel to continue operating pending a sale, which will maximize value for the Debtor's estate.

### V.     Notice

16.     Notice of this Motion has been given to (a) the United States Trustee; (b) counsel to Canyon Capital Realty Advisors LLC; (c) counsel to Credit Suisse First Boston Mortgage Securities Corporation; (d) counsel to Wachovia Bank, N.A.; (e) counsel to The Falor Companies; and (f) the Debtor's twenty (20) largest unsecured creditors. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

### VI.    No Prior Request

17.     No prior motion for the relief requested herein has been made to this or any other Court.

## VII. Conclusion

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) authorizing the Debtor to honor its obligations, including prepetition obligations, under the West Paces Operating Agreement, (b) approving the letter agreement amending the termination date and (c) granting the Debtor such other and further relief as is just and proper.

Dated: November 1, 2007

                                  CHICAGO H&S HOTEL PROPERTY, L.L.C.

                                  By:   /s/    Daniel A. Zazove
                                  PERKINS COIE LLP
                                  Daniel A. Zazove (ARDC # 3104117)
                                  Jason D. Horwitz (ARDC # 6269962)
                                  131 S. Dearborn Street, Suite 1700
                                  Chicago, Illinois 60603-5559
                                  Telephone: 312.324.8400
                                  Facsimile: 312.324.9400
                                  e-mail: dzazove@perkinscoie.com
                                  e-mail: jhorwitz@perkinscoie.com

                                            - and -

                                  AKIN GUMP STRAUSS HAUER & FELD LLP
                                  Charles R. Gibbs
                                  1700 Pacific Avenue, Suite 4100
                                  Dallas, TX 75201
                                  Telephone: 214.969.2800
                                  Facsimile: 214.969.4343
                                  email: cgibbs@akingump.com

*Attorneys for the Debtor and Debtor in Possession*