**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| CHICAGO H&S HOTEL PROPERTY, L.L.C. | ) | Case No. 07-20088 |
|  | ) |  |
| Debtor. | ) | Hon. Eugene R. Wedoff |
|  | ) |  |
|  | ) |  |

**SECOND ORDER MODIFYING AGREED FINAL ORDER
AUTHORIZING THE LIMITED USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

Upon consideration of the motion (the "Motion") of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order modifying the Agreed Final Order Authorizing the Limited Use of Cash Collateral and Granting Adequate Protection, dated November 21, 2007 (attached hereto as Exhibit A, the "Final Cash Collateral Order");[1] and it appearing that this Court has jurisdiction under 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and it appearing that venue of these proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion and the hearing was proper and no further notice need be given; and the Court having considered the Motion and it having been determined that the relief requested by the Motion is in the best interests of the Debtor and its estate and creditors, it is hereby:

ORDERED, ADJUDGED AND DECREED, that:

---

[1] All capitalized terms used but not defined herein shall have the meanings given to them in the Final Cash Collateral Order.

1.      The Final Cash Collateral Order is modified as follows:

   (a)      The Budget attached to the Final Cash Collateral Order shall be replaced in its entirety with the revised budget attached hereto as <u>Exhibit B</u> (the "Revised Budget") and any reference to the "Budget" in the Final Cash Collateral Order shall be a reference to the Revised Budget.

   (b)      The date of "December 31, 2007" in paragraph 2(A) of the Final Cash Collateral Order shall be replaced with "January 11, 2008".

   (c)      The reference to "line 23 (Professional Fees)" in the second to last line of paragraph 3 of the Final Cash Collateral Order shall be replaced with "line 22 (Professional Fees)".

2.      Notwithstanding any language in the Final Cash Collateral Order to the contrary, nothing in the Motion or this Order shall (a) give the Trustee the right to terminate the Debtor's Use of Cash Collateral, or (b) be construed as a default under the Final Cash Collateral Order.

3.      This Order is without prejudice to the Debtor's rights to further modify the Final Cash Collateral Order in accordance with its terms or by further Court order.

4.      All other terms and provisions of the Final Cash Collateral Order shall remain in full force and effect.

5.      A hearing to consider the Debtor's further use of cash collateral is set before the undersigned Bankruptcy Judge for the 11th of January, 2008 at 9:30 a.m.

Dated:      **1 9 DEC 2007**

                                        United States Bankruptcy Judge

26277-0005/LEGAL13802852.3

# **EXHIBIT A**

26277-0005/LEGAL13802852.3

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 11 |
| Chicago H&S Hotel Property, LLC | ) | |
| | ) | Case No. 07-20088 |
| | ) | |
| | ) | Hon. Eugene R. Wedoff |
| | ) | |
| Debtor. | ) | Hearing Date: November 21, 2007 |
| | ) | Hearing Time: 10:00 a.m. |

### AGREED FINAL ORDER AUTHORIZING THE LIMITED
### USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

This matter came to be heard on the Motion (the "Motion") of Chicago H&S

Hotel Property, LLC, as debtor-in-possession (the "Debtor") in these proceedings for the entry of

a final order (A) authorizing the Debtor to use certain "Cash Collateral" (as defined in

section 363(a) of the United States Bankruptcy Code, 11 U.S.C. §101, et. seq. (the "Code") and

hereinafter referred to as "Cash Collateral"), all of which Cash Collateral is presently subject to

security interests, liens, mortgages and rights of set-off of Wells Fargo Bank, National

Association, as trustee for Credit Suisse First Boston Mortgage Securities Corporation c/o

Wachovia Bank, National Association, as master servicer (the "Trustee"), and, in connection

with that authorization, (B) granting certain substitute and additional liens and other relief for the

benefit of the Trustee. Counsel for the Trustee consented to the use of certain Cash Collateral up

to the amount stated herein, provided that such use is conditioned upon the entry of a final order

in the present form imposing certain conditions and granting certain relief for the benefit of the

Trustee, as hereinafter set forth.

THE COURT HAS BEEN ADVISED THAT THE DEBTOR AND THE TRUSTEE

HAVE STIPULATED TO THE FOLLOWING:

A.      On October 29, 2007 (the "Petition Date"), the Debtor filed a Petition

(the "Petition") for relief under Chapter 11 of the Code. Pursuant to sections 1107 and 1108 of

the Code, the Debtor has retained possession of its property and is authorized thereby, as a

debtor-in-possession, to continue the operation and management of its business.

B.      On or about March 30, 2005, the Debtor and Column Financial, Inc. (the "Lender"),

which subsequently assigned the Prepetition Loan Agreement (as defined below) to the Trustee,

entered into that certain Loan Agreement, as such agreement has been amended from time to time

(the "Prepetition Loan Agreement"). Pursuant to the Prepetition Loan Agreement, the Lender

agreed to make, and has made, various advances to the Debtor, and, as a result thereof, on the

Petition Date, the Debtor was indebted to the Trustee pursuant to the Prepetition Loan Agreement

in the original principal amount of $100,785,289 (that principal amount, together with all interest,

fees, costs, expenses and other amounts now or hereafter owing or accruing pursuant to the

Prepetition Loan Agreement and the other agreements entered into by the Debtor in connection

therewith, are collectively referred to hereinafter as the "Prepetition Indebtedness").

C.      The Prepetition Indebtedness is secured by all or substantially all of the Debtor's

assets (such assets immediately prior to the Petition Date being referred to herein as the

"Prepetition Collateral") pursuant to that certain Mortgage and Security Agreement dated as of

March 30, 2005 by and between Debtor, as mortgagor, and Lender, as mortgagee

(the "Mortgage"). Pursuant to the foregoing Mortgage and related documents (the "Prepetition

Security Documents"), the Trustee has a lien on, inter alia, the Land, Additional Land,

Improvements, Easements, Equipment, Fixtures, Personal Property, Leases and Rents, Approved

Sales Contracts, Condemnation Awards, Insurance Proceeds, Tax Certiorari, Conversion, Rights,

Agreements, Trademarks, Accounts, Interest Rate Cap Agreement, Condominium Documents,

Proceeds and Other Rights (each as defined or otherwise described in the Mortgage).

D.    The Trustee asserts that the security interests in and liens and mortgages upon the

Prepetition Collateral were properly perfected prior to ninety (90) days preceding the Petition

Date, and such security interests, liens and mortgages are valid, choate, enforceable, non-

avoidable and of first priority.

E.    Pursuant to the Prepetition Loan Agreement, the Prepetition Security Documents

and the other documents and agreements related to each of the foregoing (collectively, including

the Prepetition Loan Agreement, the "Prepetition Agreements"), the Trustee has a valid and

perfected security interest in, inter alia, the cash proceeds of, and rents produced by, the

Prepetition Collateral. Cash proceeds of, and rents from, the Prepetition Collateral that come

into the possession, custody or control of the Debtor constitute Cash Collateral.

F.    The Trustee has indicated a willingness to consent to the Debtor's use of a limited

amount of Cash Collateral for a limited period of time and only pursuant to the terms of this

Order, on the condition that the United States Bankruptcy Court for the Northern District of

Illinois (the "Court"), pursuant to sections 361 and 363 of the Code, provides to the Trustee as

adequate protection (1) a security interest in and lien and mortgage upon all of the property of

the Debtor and its estate (the "Estate"), whether now existing or hereafter acquired or

arising, except as provided herein and (2) the other relief accorded the Trustee pursuant to this

Order.

G.    The Debtor, on behalf of itself and any successors, including any successor trustee, in consideration of the Trustee's consent to the use of Cash Collateral according to the terms of this Order (1) agrees not to contest the validity or enforceability of the Trustee's security interests, mortgages or liens in the Prepetition Collateral or the proceeds, rents, products or profits thereof and (2) waives any right it may have to seek avoidance of the Trustee's security interests in and mortgages and liens on the Prepetition Collateral or the proceeds, rents, products or profits thereof; provided, however, with respect to each of the foregoing, and notwithstanding anything to the contrary in this Order, the Debtor reserves its rights to object to the allowed amount of the Prepetition Indebtedness.

H.    As a result of the Debtor's insufficient available working capital to finance its postpetition operations, the immediate authorization of the use of Cash Collateral is necessary to operate the Debtor's business pending a sale of its assets. The Trustee asserts that a prompt and immediate sale of the Debtor's assets, including its hotel property (the "Property"), is necessary. The Trustee further asserts that given the state of the Property, the Debtor's relatively high level of secured debt and the absence of unencumbered assets with which to secure new borrowings, the Debtor does not have the liquidity to pursue a restructuring path other than through a sale; accordingly, the Debtor determined in the reasonable exercise of its business judgment that a sale, subject to higher and better offers, is the best, if not only, way to maximize the value of the Property.

I.    In consideration of the Trustee's consent to the use of Cash Collateral according to the terms of this Order, the Debtor agrees to:

(i)    conduct an auction of the Property (if necessary);

(ii)    absent further order of the Court, seek final approval of the sale of the Property at
a hearing before this Court on or before February 29, 2008, subject, however, to
the Court's scheduling (the "Final Sale Hearing"); and

(iii)   absent further order of the Court, consummate the sale of the Property approved at
the Final Sale Hearing no later than March 31, 2008 (the "Final Sale").

Any and all proceeds of any sale of the Debtor's assets outside of the ordinary course of business

shall be applied, upon the closing of such sale, to the payment in cash of the Prepetition

Indebtedness in such allowed amount as agreed by the parties or determined by the Court;

provided, however, the Debtor shall reserve funds from such proceeds sufficient to pay any

colorable claims asserting mechanics' liens against the Prepetition Collateral which may be

senior in priority to or pari passu with any and all liens or security interests or mortgages of the

Trustee in the Prepetition Collateral.

J.      The Debtor acknowledges the validity and enforceability of the liens, security

interests, and mortgages of the Trustee securing the Prepetition Indebtedness.  The Debtor agrees

that it will not at any time contest the validity, perfection, priority or enforceability of the liens

and security interests of the Trustee securing the payment and performance of the Prepetition

Indebtedness; provided, however, that the Debtor reserves the right to object to the allowed

amount of the Prepetition Indebtedness, but waives its right to assert any claim for equitable

subordination, recharacterization or equitable disallowance with respect to the Prepetition

Indebtedness.

K.      The Debtor acknowledges and recognizes that the Trustee has consented to the

use of its cash collateral in conjunction with, and reliance upon, the Debtor's undertaking to

conduct a sale of the Property and that such prompt sale is a material inducement to the Trustee

to provide its consent.

L.      The Trustee asserts that the Property may be subject to further deterioration and erosion in value and that the adequate protection provided herein may not be sufficient, and that by entering into this stipulation the Trustee does not waive any right or remedy to seek additional adequate protection nor any remedy for the failure of the Debtor to provide such adequate protection; and that absent a prompt sale of the Property as set forth herein, the Trustee currently contends that there will not be adequate protection of its interests. The Debtor reserves all of its rights and defenses with respect to any of the Trustee's assertions and rights in this paragraph.

M.      Further, the Trustee reserves all of its rights under the Code, including, without limitation, its rights to seek to dismiss or convert the Debtor's chapter 11 case, to seek relief from the automatic stay and to seek to terminate the Debtor's exclusive right to file a plan of reorganization under section 1121 of the Code. The Debtor also reserves all of its rights, defenses and claims with respect thereto.

BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTOR AND THE TRUSTEE TO THE ENTRY OF THIS ORDER, THE COURT FINDS AS FOLLOWS:

i.      The Debtor has provided such notice as was practicable under the circumstances and as may be required by Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to (1) the Trustee (2) the official committee of unsecured creditors appointed on or about November 8, 2007 (the "Committee") and (3) the United States Trustee for the Northern District of Illinois (the "United States Trustee") of the hearing to be held in connection with this Order by serving upon them on November 16, 2007, the Interim Order. The Court expressly finds, in view of the urgency of the relief requested and the notice procedures for

objection to the Motion prior to a final hearing thereon, that such notice is adequate and sufficient under the circumstances and under Bankruptcy Rule 4001(b), and that no further or other notice need be given. On November 13, 2007, this Court entered an order authorizing the Debtor to use Cash Collateral on an interim basis.

ii.      A need exists for the Debtor to use Cash Collateral in order to maintain its operations. The Debtor requires Cash Collateral for the payment of, *inter alia*, operating expenses, the purchase of inventory, equipment and supplies and to meet other expenses necessary to preserve its assets and continue its operations. The Debtor will be irreparably harmed unless it is authorized to continue to use Cash Collateral on the terms and conditions set forth herein.

iii.      The Trustee will not agree to consent to the usage of Cash Collateral except on the terms and conditions contained in this Order and is relying on such terms and conditions in agreeing to the Debtor's use of Cash Collateral on the terms hereof.   It is necessary and appropriate for the Debtor to grant to the Trustee liens, security interests, and mortgages in the property of the Estate as set forth in this Order and to provide the Trustee the other rights and protections set forth herein.

iv.      The security interests and liens granted in this Order to the Trustee do not impair the valid and perfected security interests and liens, if any, of any holder of a security interest or lien in the property of the Estate other than the Trustee.

v.      The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2). Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the Debtor as a going concern, will increase the

possibilities for a successful chapter 11 case and is in the best interests of the Debtor, its creditors

and the Estate.  The terms of the use of Cash Collateral authorized hereby are fair under the

circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its

fiduciary duties.

vi.    The Trustee and the Debtor have (1) negotiated the terms and conditions of this

Order in good faith and at arms-length and (2) offered sufficient evidence of the good faith of the

Trustee in agreeing to this Order and the Debtor's use of the Cash Collateral of the Trustee on the

terms set forth herein.

NOW THEREFORE, IT IS HEREBY ADJUDGED, ORDERED AND DECREED:

1.    For purposes of this Order, the term "Cash Collateral" shall be deemed to include

cash and cash equivalents of the Debtor, including all rents of the Debtor, all deposits subject to

setoff and all cash and cash equivalents arising from the collection or other conversion to cash or

cash equivalents of property of the Debtor.

### Cash Collateral Usage

2.    Subject to the terms and conditions contained in this Order, the Debtor may use

Cash Collateral during the period commencing on the date of this Order through and including

the earlier of (A) 5:00 p.m. (Chicago Time) on December 31, 2007, and (B) the time when the

consent of the Trustee to the Debtor's use of Cash Collateral is terminated pursuant to the terms

of this Order (the "Budget Period").  The Debtor shall use or consume Cash Collateral only (1) in

accordance with the budget attached hereto as __Exhibit A__ (the "Budget"), including the time

period and category limits set forth therein, with a permitted 5% deviation of each line item, and

only for the Budget Period and (2) in compliance with the other terms of this Order.  To the

extent that the Debtor does not use all of the funds allocated to a particular line item in the
Budget for a particular week, the Debtor may add the unused funds to the amount allocated to the
same line item in the Budget for the following week. The cumulative amount of Cash Collateral
usage during such period shall not exceed the amount set forth in the Budget for such period with
a permitted 5% deviation of each line item.

3.       Notwithstanding anything to the contrary herein, no Cash Collateral may be used
to compensate professional services rendered to or expenses incurred in connection with, directly
or indirectly, (A) the modification, stay or amendment of this Order without the consent of the
Trustee or (B) a violation, breach or default of this Order or any provision of the Loan
Documents made applicable to this proceeding by this Order, including, without limitation, any
claim or action the purpose of which is to seek or the result of which would be to obtain any
relief (i) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the liens or
security interests or mortgages of the Trustee in the Collateral or (ii) preventing, hindering, or
otherwise delaying, whether directly or indirectly, the assertion, enforcement, or realization of
the Trustee upon any Collateral as permitted by this Order or the Loan Documents; provided,
however, that the Committee may use the amounts set forth in line 23 (Professional Fees) of the
Budget for the purpose of investigating the liens and claims of the Trustee.

4.       The Trustee shall have the right to terminate the Debtor's right to use Cash
Collateral pursuant to the terms of this Order upon (A) a default in the performance of any
obligation of the Debtor hereunder, including meeting the provisions and deadlines set forth in
stipulation I of this Order, (B) the modification, stay or amendment of this Order without the
consent of the Trustee, (C) the institution of any claim or action by the Debtor the purpose of
which is to seek or the result of which would be to obtain any relief (i) invalidating, setting aside,

avoiding or subordinating, in whole or in part, the Trustee's liens, mortgages or security interests in the Collateral, or the entry of any order by the Court with respect to any of the foregoing (whether or not initiated by the Debtor) adverse to the Trustee, (ii) preventing, hindering or otherwise delaying, whether directly or indirectly, the Trustee's assertion, enforcement or realization upon any Collateral as permitted by this Order, or (iii) otherwise seeking relief against the Trustee without its consent, (D) the conversion or dismissal of the Debtor's bankruptcy case or (E) the institution by the Debtor of an action to seek that the Court grant or impose, under section 364 of the Code or otherwise, liens, security interests or mortgages on any of the Collateral equal, superior or subordinate to the Trustee's liens, security interests, or mortgages on that property; provided, however, the Debtor may seek to impose liens, security interests or mortgages equal, superior or subordinate to the liens, security interests or mortgages securing the Prepetition Indebtedness in order to finance the payment of real estate taxes on the Property first due in December, 2007; provided further, that the Trustee shall have a right of first refusal to provide financing to pay any such taxes. Notwithstanding the foregoing, the Debtor reserves the right to seek to use additional Cash Collateral and/or obtain additional "priming" financing from a third party lender for operations and bankruptcy-related expenses for the period after December 31, 2007, and the Trustee reserves its right to object to the foregoing.

5.    Notwithstanding the foregoing, upon the occurrence of any of the events described in paragraph 4 other than those events described in subsection (B) thereof, the Trustee's consent to the use of Cash Collateral shall not terminate until 8:00 a.m. (Chicago Time) on the second business day after the day on which the Trustee shall have given written notice (by facsimile or electronic mail) to the Debtor and its counsel, to counsel of record for the

Committee, and to the United States Trustee of its termination of such consent. For purposes of this paragraph a business day will end at 5:00 p.m. (Chicago Time).

### Adequate Protection Liens

6.      As adequate protection for the Trustee's interests as of the Petition Date in the Prepetition Collateral, the Trustee is hereby granted, pursuant to sections 361 and 363 of the Code, a valid, choate, perfected, enforceable and non-avoidable first priority security interest in and lien and mortgage upon all assets and property of the Debtor and the Estate, of any kind or nature whatsoever, whether now existing or hereafter acquired or arising, and all proceeds, rents, products or profits thereof (collectively, the "Postpetition Collateral" and, together with the Prepetition Collateral, the "Collateral"), including, without limitation, the Prepetition Collateral owned by the Debtor as of the Petition Date and all proceeds, rents, products or profits thereof. Such security interest, lien and mortgage shall at all times be senior to the rights of the Debtor and any successor, including any successor trustee, in this or any subsequent proceedings under the Code and shall be superior in priority to the Trustee's security interests, liens, and mortgages existing prior to the Petition Date. Notwithstanding the foregoing, (A) the Trustee is not hereby granted a security interest or lien in any cause of action of the Estate arising solely under sections 544, 545, 547, 548, 549 or 553(b) of the Code and (B) the Trustee's security interest, lien and mortgage shall be subject to valid, perfected, enforceable and non-avoidable liens and security interests in the Debtor's assets held by parties other than the Trustee as of the Petition Date which are superior in priority to the Trustee's security interests, liens and mortgages on such assets. The liens, security interests, mortgages, rights, and remedies granted to the Trustee pursuant to this Order shall not be modified, altered or impaired in any manner by any plan of reorganization or order of confirmation for the Debtor, or by any other financings of, extensions of credit to, or

incurring of debt by the Debtor, whether pursuant to sections 363 or 364 of the Code, or
otherwise; provided, however, the Debtor may seek to impose liens, security interests or
mortgages equal, superior or subordinate to the liens, security interests or mortgages securing the
Prepetition Indebtedness in order to finance the payment of real estate taxes on the Property first
due in December, 2007; provided further, that the Trustee shall have a right of first refusal to
provide financing to pay any such taxes. Notwithstanding the foregoing, the Debtor reserves the
right to seek to use additional Cash Collateral and/or obtain additional "priming" financing from
a third party lender for operations and bankruptcy-related expenses for the period after
December 31, 2007, and the Trustee reserves its right to object to the foregoing.

7.     The security interests, liens and mortgages granted herein (A) are and shall be in
addition to all security interests, liens, mortgages and rights of set-off existing in favor of the
Trustee on the Petition Date, and (B) are and shall be valid, choate, perfected, enforceable, non-
avoidable and effective as of the Petition Date without any further action by the Debtor or the
Trustee and without the execution, filing or recordation of any financing statements, security
agreements, vehicle lien applications, mortgages or other documents. All security interests, liens
and mortgages granted herein to the Trustee be and they hereby are deemed perfected, and no
further notice, filing or other act shall be required to effect such perfection. If the Trustee shall,
in its sole discretion, choose to file financing statements, mortgages or other documents or
otherwise confirm perfection of such security interests, liens or mortgages, the Trustee is
authorized to effect such filings and recordations, and all such financing statements, mortgages
or similar documents shall be deemed to have been filed or recorded at the time and on the date
of entry of this Order. A photocopy of this Order may, in the discretion of the Trustee be filed
with or recorded in filing or recording offices in addition to or in lieu of such financing

statements, notices of lien or similar instruments, and all filing offices are hereby directed to accept such copy of this Order for filing and recording. If the Trustee hereafter requests the Debtor to execute and deliver to the Trustee financing statements, mortgages or other instruments or documents considered by the Trustee to be necessary or desirable to further evidence the perfection of the liens, security interests or mortgages granted in this Order, the Debtor is hereby authorized and directed to execute and deliver those financing statements, instruments and documents.

8.    The security interests, liens and mortgages granted herein shall secure payment of (A) the allowed Prepetition Indebtedness in an amount equal to any diminution in value of the interest in the Prepetition Collateral of the Trustee which occurs during the pendency of the Debtor's bankruptcy case, whether such diminution is a consequence of (i) the Debtor's use of Collateral (including the Debtor's consumption of Cash Collateral), (ii) depreciation or price fluctuation in the Collateral, (iii) the conversion of such Prepetition Collateral into Postpetition Collateral or (iv) any other action, event or circumstance, (B) all allowed interest payable to the Trustee, (C) all allowed fees, costs, and expenses of the Trustee and (D) the aggregate amount of Cash Collateral used by the Debtor.

9.    Nothing in this Order shall in any way restrict the scope of the Trustee's prepetition liens, security interests, mortgages, rights of set-off or claims with respect to the Prepetition Indebtedness or the Prepetition Collateral, or the proceeds, rents, products or profits thereof.

10.     Nothing contained in this Order or otherwise, and no action or inaction of the Trustee shall be deemed to be a consent by the Trustee to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Code or otherwise.

### Additional Protection

11.     As further protection for the interests of the Trustee as of the Petition Date in the Prepetition Collateral, the Debtor shall pay in full, in cash, to the Trustee proceeds of the sale, lease or other disposition of the Collateral, including the Property, outside of the ordinary course of business (the "Sale Proceeds") on account of the allowed Prepetition Indebtedness as determined by agreement of the Trustee and the Debtor (with notice to the Committee) or determined by the Court; provided, however, the Debtor shall reserve (the "Lien Reserve") funds from such proceeds sufficient to pay any colorable claims asserting mechanics' liens against the Prepetition Collateral that may be senior in priority to or pari passu with any and all liens or security interests or mortgages of the Trustee in the Prepetition Collateral; provided, however, the Debtor agrees to cooperate reasonably with the Trustee and the Committee in reaching agreement on the amount of the Lien Reserve.

12.     In addition to the foregoing protections, except where inconsistent with the Code, the Bankruptcy Rules or orders of this Court in this case, the Debtor shall fully comply with its obligations as set forth in the Prepetition Agreements, with respect to (i) access to the Debtor's books and records and the Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral, (ii) financial and other reporting to be reasonably specified by the Trustee, (iii) inspections, (iv) maintenance and preservation of Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral, (v) operations and (vi) the other provisions therein, except that the Debtor need not comply with representations as to the absence of any

proceeding such as the Debtor's bankruptcy case, or provisions requiring the payment of money
to the Trustee or establishing any financial covenants. In addition, the Debtor shall furnish, or
cause to be furnished, on a prompt basis, to the Trustee any reports or other information
concerning any sale or proposed sale of the Debtor's assets, including without limitation such
information concerning any sale or proposed sale of the Debtor's assets, as the Trustee may from
time to time reasonably request. The Debtor shall permit Jones Lang LaSalle, who has been
retained to sell the Property, to communicate and provide further information as may be
reasonably requested by and to the Trustee.

### Cash Management

13.    The Debtor is authorized and directed to manage all Cash Collateral in accordance
with the cash management order entered by the Court, with such changes to such order as the
Debtor and the Trustee shall agree in writing (with notice to the Committee). The Debtor agrees
to deposit all funds coming into its possession into its prepetition deposit account at Citibank or
such other accounts as may be opened by the Debtor at Citibank upon written notice to, and the
prior written consent of, the Trustee.

14.    The Debtor shall immediately deposit any amounts received on or after the
Petition Date into the Debtor's prepetition deposit account at Citibank or such other accounts as
may be opened by the Debtor at Citibank upon written notice to, and the prior consent of, the
Trustee.

### Miscellaneous

15.    The Debtor (A) hereby releases and discharges the Trustee and its agents,
attorneys, officers, directors, affiliates and employees from any and all lender liability claims and

lender liability causes of action arising out of the relationship of the Trustee with the Debtor

prior to or in connection with the entry of this Order and the interim order with respect thereto;

and (B) hereby waives any and all defenses to the Trustee's security interests in and liens and

mortgages on the Prepetition Collateral; provided, however, that the Debtor reserves its rights to

object to the allowed amount of the Prepetition Indebtedness

16.    The release, discharge and waivers set forth above will be deemed effective as of

the date of the entry of this Order; provided, however, that the foregoing release shall not impair

the right of the Committee or any party in interest to assert against the Trustee claims that may

belong to the Debtor's Estate arising out of prepetition activities so long as such claims are

properly and specifically asserted through an adversary complaint filed with this Court by no

later than January 28, 2008 for parties in interest and no later than January 7, 2008 for the

Committee.

17.    In accepting the Budget and by consenting to the use of Cash Collateral, the

Trustee shall not have any liability to any third party (except with respect to its breach of any of

its obligations herein or in the event of its gross negligence, willful misconduct or bad faith) and

shall not be deemed to be in control of the operations of the Debtor or to be acting as a

"responsible person" or "owner" or "operator" with respect to the operation or management of

the Debtor.  No third party is intended to be or shall be deemed to be a third party beneficiary of

the provisions of this Order.

18.    The subject of this Order is a "core" proceeding within the meaning of 28 U.S.C.

§ 157.  This Order shall be valid and fully effective, shall be binding upon and inure to the

benefit of the Trustee, the Debtor, the Estate, and its respective successors and assigns

(including, without limitation, any trustee or examiner in this or any subsequent proceeding under the Code), immediately upon its entry and during the pendency of the Debtor's bankruptcy proceeding, subject to the right of the Trustee to terminate its consent to the Debtor's use of Cash Collateral as provided in this Order or the expiration of such consent on the date set forth herein.

19.    If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect (A) the validity of any benefit granted to the Trustee pursuant to this Order with respect to any Cash Collateral released by the Trustee to the Debtor prior to the later of (i) the effective date of such stay, modification, or vacation, and (ii) receipt of written notice thereof by counsel to the Trustee at the address listed at the end of this Order (the "Effective Time") or (B) the validity and enforceability of any lien, security interest, mortgage or priority authorized hereby. Notwithstanding any such stay, modification, or vacation, any release of Cash Collateral made pursuant to this Order by the Trustee prior to the Effective Time shall be governed in all respects by the original provisions of this Order.

20.    Nothing in this Order shall be construed to preclude the Illinois Department of Revenue (the "Department") from attempting to establish that funds held by the Debtor or any secured creditor are held in trust for the Department and shall not preclude the Department from seeking additional relief with respect to those funds. Likewise, nothing in this Order shall preclude the Debtor or any secured creditor from challenging any such assertions or contending that any such funds are not held in trust for the Department. The security interests provided for herein shall not diminish in any way the rights, if any, of the Department as an asserted trust fund claimant to obtain possession of funds subject to its asserted trust claims. Funds which the

Court, after notice and hearing, may determine constitute trust funds of the Department that are

not property of the Estate shall not constitute the collateral of any secured creditor.

### Notice Provisions

21.    The Debtor shall, within three (3) business days of the entry of this Order, serve

by regular mail, facsimile transmission or electronic mail a copy of this Order, to each of the

Trustee, its counsel at each of the addresses set forth at the end of this Order, counsel to the

Committee, the United States Trustee, any other persons which the Debtor knows are entitled to

notice under Bankruptcy Rule 4001(b) as of such date, and any other party-in-interest for which

counsel to the Debtor has received a written request in this case before noon (Chicago Time) on

such date to receive such pleadings.

Dated: November [**21**], 2007.

UNITED STATES BANKRUPTCY JUDGE

Consented to:

CHICAGO H&S HOTEL PROPERTY, LLC

By:   /s/ Daniel A. Zazove
      One of Its Attorneys


PERKINS COIE LLP
Daniel A. Zazove (IL 3104117)
Jason Horwitz (IL 6269962)
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone:  (312) 324-8400
Facsimile:  (312) 324-9400


WELLS FARGO BANK, N.A., AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORPORATION, C/O WACHOVIA BANK, N.A.


By:   /s/ Brad B. Erens
      One of Its Attorneys


JONES DAY
Brad B. Erens, Esq. (IL 6206864)
Mark A. Cody, Esq. (IL 6236871)
77 W. Wacker Drive
Chicago, IL 60601-1692
Telephone  (312) 782-3939
Facsimile  (312) 782-8585

## EXHIBIT A

# HOTEL 71
## Weekly Cash Flow
*(Amounts in Thousands of Dollars)*

71

| | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Cash, beg | 200 | 429 | 234 | 332 | 189 | 310 | 383 | 414 | 213 | 200 |
| **Cash receipts:** | | | | | | | | | | |
| Hotel operations | 309 | 288 | 332 | 296 | 337 | 351 | 256 | 193 | 185 | 2,547 |
| Parking | - | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - | - |
| Total Cash Receipts | 309 | 288 | 332 | 296 | 337 | 351 | 256 | 193 | 185 | 2,547 |
| **Disbursements - operations:** | | | | | | | | | | |
| 1 Payroll | - | 185 | - | 210 | - | 180 | - | 180 | - | 735 |
| 2 Benefits | - | 9 | - | 82 | - | - | - | 82 | - | 173 |
| 3 Other cost of sales | 11 | 12 | - | 9 | - | 16 | - | 19 | - | 67 |
| 4 Contract Services | - | 10 | - | 5 | - | 5 | - | 5 | - | 25 |
| 5 Credit card commission | 5 | 7 | 7 | 5 | 9 | 6 | 5 | 3 | 5 | 52 |
| 6 Elevators | - | - | 61 | - | 20 | - | 11 | - | 20 | 112 |
| 7 Licenses/Fees | - | - | 7 | - | - | - | 7 | - | - | 14 |
| 8 Insurance | | | | | | | | | | |
| Liability | - | 14 | - | - | - | 14 | - | - | - | 28 |
| Property | - | 33 | - | - | - | - | 33 | - | - | 66 |
| Worker's comp | 14 | - | - | 14 | - | - | - | - | - | 28 |
| 9 Laundry | 5 | 5 | - | 19 | - | - | - | - | 25 | 34 |
| 10 Legal fees | - | - | - | - | - | - | - | - | - | - |
| 11 Liens | 1 | 1 | - | 7 | - | - | - | - | 9 | 18 |
| 12 Maintenance | - | 5 | 8 | - | 5 | - | 5 | - | 5 | 28 |
| 13 Reservation services | - | - | - | 10 | - | - | - | - | 13 | 23 |
| 14 Sales & marketing | - | - | 29 | - | - | - | 28 | - | - | 57 |
| 15 Supplies | - | 14 | 5 | 8 | - | 8 | - | 8 | - | 43 |
| 16 Taxes - Occupancy (current) | 31 | 39 | 42 | 30 | 49 | 29 | 26 | 17 | 26 | 289 |
| 17 Taxes - Food & Bev Sales Tax | - | - | - | - | 19 | - | - | - | 18 | 28 |
| 18 Telephone/cable/information Systems | - | 15 | - | - | 15 | - | - | - | - | 30 |
| 19 Travel agent commissions | - | - | 10 | - | 53 | - | - | - | - | 63 |
| 20 Utilities/security service | - | 50 | 40 | 20 | - | - | 40 | 20 | - | 170 |
| 21 West Paces | | | | | | | | | | |
| Management fee | - | 33 | - | - | 25 | - | - | - | 20 | 78 |
| Legal/other | - | 26 | - | - | 10 | - | - | - | 10 | 46 |
| 22 Other operating | 13 | 25 | 25 | 20 | 20 | 20 | 20 | 20 | 20 | 183 |
| 23 Professional fees | - | - | - | - | - | - | 50 | - | - | 50 |
| 24 U.S. Trustee fees | - | - | - | - | - | - | - | 40 | 5 | 45 |
| 25 Leases | - | - | - | - | - | - | - | 40 | 5 | 45 |
| Total | 80 | 483 | 234 | 439 | 216 | 278 | 225 | 394 | 176 | 2,525 |
| *Net Change in Cash from Ops* | 229 | (195) | 98 | (143) | 121 | 73 | 31 | (201) | 9 | 22 |
| Cash, ending | 429 | 234 | 332 | 189 | 310 | 383 | 414 | 213 | 222 | 222 |

Confidential

10/31/2007 11:49 AM

**HOTEL 71**
**Weekly Cash Flow**
*(Amounts in Thousands of Dollars)*

| Accounts Receivable | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning | 885 | 832 | 864 | 875 | 828 | 916 | 842 | 820 | 778 | 885 |
| **Billings** | | | | | | | | | | |
| Room Sales | 199 | 255 | 274 | 193 | 315 | 187 | 166 | 113 | 172 | 1,874 |
| Food & Bev | 23 | 15 | 25 | 23 | 60 | 60 | 40 | 20 | 20 | 300 |
| Other | 1 | 1 | 2 | 1 | 1 | 1 | 2 | 1 | 1 | 11 |
| Occupancy taxes | 33 | 39 | 42 | 30 | 49 | 29 | 26 | 17 | 26 | 289 |
| Total Billings | 256 | 320 | 343 | 249 | 425 | 277 | 234 | 151 | 219 | 2,474 |
| Cash receipts | (309) | (288) | (332) | (296) | (337) | (351) | (256) | (193) | (185) | (2,547) |
| Write-off Adjustments | - | - | - | - | - | - | - | - | - | - |
| Ending | 832 | 864 | 875 | 828 | 916 | 842 | 820 | 778 | 812 | 812 |

Assumptions:

1) Cash flow assumes occupancy taxes are paid the week they are collected, and assumes no payment of past due amounts.

2) Assumes no payment of property taxes, which are estimated to be $900k and payable the first of December.

3) Excludes payment of debtors professional fees: Akin Gump, Perkins Coie, DSI and JLL.

4) Assumes restricted occupancy through week 2 due to elevator service issues.

5) Assumes internet booking agent continues to pay in the normal course.

Confidential

10/31/2007 11:49 AM

## EXHIBIT B

26277-0005/LEGAL13802852.3

**HOTEL 71**
**Weekly Cash Flow**
**Budget/Actual**
*(Amounts in Thousands of Dollars)*

| week ended | 11/4 wk1 actual | 11/11 wk2 actual | 11/18 wk3 actual | 11/25 wk4 actual | 12/2 wk5 actual | 12/9 wk6 | 12/16 wk7 | 12/23 wk8 | 12/30 wk9 | 1/6 wk10 | 1/13 wk11 | 1/20 wk12 | 1/27 wk13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash, beg | 460 | 578 | 838 | 987 | 854 | 1,187 | 734 | 801 | 551 | 535 | 420 | 362 | 125 | 460 |
| **Cash receipts:** | | | | | | | | | | | | | | |
| Hotel operations | 191 | 309 | 399 | 128 | 420 | 351 | 256 | 193 | 185 | 165 | 111 | 119 | 113 | 2,940 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Cash Receipts | 191 | 309 | 399 | 128 | 420 | 351 | 256 | 193 | 185 | 165 | 111 | 119 | 113 | 2,940 |
| **Disbursements - operations:** | | | | | | | | | | | | | | |
| 1 Payroll | - | - | 183 | 172 | - | 165 | - | 160 | - | 160 | 65 | 160 | - | 1,065 |
| 2 Benefits | - | - | - | - | 38 | 89 | - | 82 | - | - | - | 82 | - | 291 |
| 3 Other cost of sales | - | 1 | 10 | 28 | 10 | 16 | - | 19 | - | 7 | - | 7 | - | 98 |
| 4 Contract Services | - | - | - | 8 | 4 | 5 | - | 5 | - | 5 | - | 5 | - | 32 |
| 5 Credit card commission | 1 | - | 18 | 1 | 2 | 6 | 5 | 3 | 5 | 2 | 3 | 3 | 2 | 51 |
| 6 Elevators | - | - | - | 7 | - | 55 | - | - | 20 | - | 11 | - | 20 | 113 |
| 7 Licenses/Fees | - | - | 9 | - | 1 | - | 7 | - | - | - | 7 | - | - | 24 |
| 8 Insurance | | | | | | | | | | | | | | |
| Liability | - | - | - | 7 | - | 14 | - | - | - | 7 | - | - | - | 28 |
| Property | - | - | - | - | - | 65 | - | - | - | - | - | - | - | 65 |
| Worker's comp | - | - | - | 14 | - | - | 14 | - | - | 14 | - | - | - | 42 |
| 9 Laundry | - | - | - | 7 | 5 | 5 | - | 15 | - | 10 | - | 10 | - | 52 |
| 10 Linens | - | - | - | 1 | - | 5 | - | - | 9 | - | - | - | 5 | 20 |
| 11 Maintenance | - | 1 | - | 1 | - | - | 8 | - | 5 | - | 5 | - | 5 | 25 |
| 12 Reservation services | - | - | - | - | - | 15 | - | - | 13 | - | - | - | 7 | 35 |
| 13 Sales & marketing | - | - | - | - | - | - | 28 | - | - | - | 21 | - | - | 49 |
| 14 Supplies | - | - | - | 5 | 2 | 8 | - | 12 | - | 10 | - | 6 | - | 43 |
| 15 Occupancy Taxes | | | | | | | | | | | | | | |
| Current | - | - | - | - | - | 29 | 26 | 17 | 26 | 16 | 16 | 18 | 14 | 162 |
| Past Due | - | - | - | - | - | 188 | - | - | - | - | - | - | - | 188 |
| 16 Taxes - Food & Bev Sales Tax | - | - | - | - | - | - | - | - | 18 | - | - | - | 4 | 22 |
| 17 Telephone/cable/Information Systems | - | - | - | 1 | 9 | 6 | 8 | - | - | 15 | - | - | - | 39 |
| 18 Travel agent commissions | - | - | 18 | - | - | 25 | 22 | - | - | 8 | - | - | - | 73 |
| 19 Utilities/security service | - | 20 | - | - | 7 | 50 | 1 | 70 | 20 | 1 | 1 | 40 | 20 | 230 |
| 20 West Paces | | | | | | | | | | | | | | |
| Management fee | - | - | - | - | - | 33 | - | - | 20 | - | - | - | - | 53 |
| Shared services | - | - | - | - | 4 | - | - | - | 30 | - | - | - | 30 | 64 |
| Legal/other | - | 27 | 2 | - | - | - | - | - | 10 | - | 15 | - | 15 | 69 |
| 21 Other operating | 2 | - | 10 | 8 | 5 | 25 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 190 |
| 22 Professional fees | - | - | - | - | - | - | - | 50 | - | - | - | - | - | 50 |
| 23 U.S. Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | 8 | 8 |
| 24 Leases | - | - | - | 1 | - | - | - | 40 | 5 | 5 | 5 | 5 | 5 | 66 |
| Total | 3 | 49 | 250 | 261 | 87 | 804 | 189 | 443 | 201 | 280 | 169 | 356 | 155 | 3,247 |
| Net Change in Cash from Ops | 188 | 260 | 149 | (133) | 333 | (453) | 67 | (250) | (16) | (115) | (58) | (237) | (42) | (307) |
| Funds transferred (to)/from secure lender | (70) | - | - | - | 1,032 | - | - | - | - | - | - | - | - | 962 |
| Property taxes paid | - | - | - | - | (1,032) | - | - | - | - | - | - | - | - | (1,032) |
| Cash, ending | 578 | 838 | 987 | 854 | 1,187 | 734 | 801 | 551 | 535 | 420 | 362 | 125 | 83 | 83 |

Confidential

**HOTEL 71**

**Weekly Cash Flow**

**Budget/Actual**

*(Amounts in Thousands of Dollars)*

| Week ended | 11/4 wk1 | 11/11 wk2 | 11/18 wk3 | 11/25 wk4 | 12/2 wk5 | 12/9 wk6 | 12/16 wk7 | 12/23 wk8 | 12/30 wk9 | 1/6 wk10 | 1/13 wk11 | 1/20 wk12 | 1/27 wk13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Accounts Receivable, estimate* | | | | | | | | | | | | | | |
| **Beginning** | 375 | 509 | 592 | 544 | 595 | 560 | 486 | 464 | 422 | 456 | 402 | 402 | 409 | 375 |
| Billings | | | | | | | | | | | | | | |
| Room Sales | 209 | 291 | 292 | 145 | 285 | 187 | 166 | 113 | 172 | 87 | 86 | 100 | 78 | 2,211 |
| Food & Bev | 82 | 54 | 14 | 10 | 21 | 60 | 40 | 20 | 20 | 7 | 7 | 7 | 7 | 349 |
| Other | 2 | 2 | - | 2 | 35 | 1 | 2 | 1 | 1 | 1 | 2 | 1 | 1 | 51 |
| Occupancy taxes | 32 | 45 | 45 | 22 | 44 | 29 | 26 | 17 | 26 | 16 | 16 | 18 | 14 | 350 |
| Total Billings | 325 | 392 | 351 | 179 | 385 | 277 | 234 | 151 | 219 | 111 | 111 | 126 | 100 | 2,961 |
| Cash receipts | (191) | (309) | (399) | (128) | (420) | (351) | (256) | (193) | (185) | (165) | (111) | (119) | (113) | (2,940) |
| Write-off/ adjustments | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending** | 509 | 592 | 544 | 595 | 560 | 486 | 464 | 422 | 456 | 402 | 402 | 409 | 396 | 396 |

Assumptions:

1) Cash flow assumes occupancy taxes are paid the week they are collected, and assumes no payment of pre-petition amounts.

2) Excludes lockbox balance of $165,056 being held by the secured lender as of 11/30/07.

3) Excludes payment of debtors professional fees: Akin Gump, Perkins Coie, DSI and JLL.

4) Assumes internet booking agent continues to pay in the normal course.

Confidential